## JAMES MAHONEY *vs.* NEW YORK AND NEW ENGLAND RAILROAD COMPANY.

Suffolk.    December 6, 1893. — March 1, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Personal Injuries — Employers' Liability Act — Due Care — Negligence.*

Evidence that a person was a section foreman in the employ of a railroad corpora- tion, having the immediate charge and superintendence of a gang of five men, his duty being to take receipts, check the freight into the cars, and see that it was loaded into the right cars, and under whose direction the five men were working all the time in handling the freight, will authorize a finding that his principal duty was that of superintendence, within St. 1887, c. 270, § 1, cl. 2.

A., who was one of a gang of men employed by a railroad corporation in handling

freight, was directed by the foreman of the gang to assist, with the others, in unloading a heavy bale of burlaps from a wagon which had backed up to the door of the freight-house. A. and another man, by direction of the foreman, went upon the wagon at the rear of the bale and pushed, using hooks to grapple with, while the rest of the men stood in the door of the house and pried up the end of the bale in front with a truck and pulled it forward with grappling hooks. Several attempts were made to move the bale, advancing it a short distance each time, and, it being about half way into the house, the other half resting on the floor of the wagon, the men made a final effort to move it, when the rear end of the wagon settled down, the bale fell between the wagon and the house, the wagon shoved out into the street, and A., falling to the ground with the bale, was injured. There was a gang plank near by which might have been used, and which, if used, would have prevented the accident." *Held*, in an action by A. against the corporation for his injury, that the questions whether the plaintiff was in the exercise of due care, and whether the defendant was negligent, were rightly submitted to the jury.

TORT, under St. 1887, c. 270, § 1, cl. 2, for personal injuries occasioned to the plaintiff, while in the employ of the defendant corporation as a freight handler, by the alleged negligence of the defendant's superintendent. Trial in the Superior Court, before *Sherman*, J., who allowed a bill of exceptions, in substance as follows.

Evidence tending to show the following facts was introduced. The men who worked in the freight-house, where the plaintiff was employed, were all under the general orders and supervision and control of an officer, known as the foreman of the house. The men were divided up into various sections or gangs of about half a dozen in each. The plaintiff belonged to section No. 1, and these men were to a certain extent under the orders of one of their number, Thomas Grady, who was known as the section boss or section foreman. The duties of the other members of the gang were chiefly in loading, unloading, and trucking freight, whether from cars or teams.

On the evening of January 14, 1890, about half past five o'clock, it being dark, an express team belonging to Johnson and Company was driven to one of the doors of the freight-house, containing a bale of burlaps about six and one half feet long, nearly four feet wide, and nearly two feet high, weighing about 2,200 pounds. The team was an ordinary express wagon, having a flat bottom with no sides, except the rear part of the wagon, which had straight sides about a foot and a half high, in order to protect the contents of the wagon from the hind wheels,

and had two springs behind and one in front. The front wheels were low enough to turn freely under the wagon. The wagon was about eight feet in length and four feet in width. No question was made that the wagon was in good condition. There was a tail-board, which at the time was let down nearly, but not quite, to the level of the floor of the wagon. The bale was resting on the rear part of the wagon, so that the end of it was partly over the tail-board, coming within about six inches of the end of the tail-board. When the wagon was backed up to the door the tail-board was slightly below the level of the sill of the door.

The driver of the team and the door-man, named Riordan, not being able, on account of the weight of the bale, to unload it, Grady, the section foreman, was asked to send assistance for the purpose of unloading it, this being the ordinary custom in such cases. Grady addressed the members of his gang generally, and among them the plaintiff, directing them to go and help the teamster unload the bale, and in response to this direction all of the gang went and assisted in unloading except one who was at the time in another freight-house. The evidence was conflicting as to what part Grady took in the unloading, but the plaintiff's evidence tended to show that Grady went with the men and remained during the entire time while they were unloading the bale, giving some orders in connection therewith; and that he and Croke, another member of the gang, equally gave signals to the men in the operation of unloading. It also appeared that, if Grady was present, he was in the freight-house all the time, and did not go out upon the team or upon the ground.

Similar bales had frequently been brought to the house and unloaded, and the plaintiff had several times assisted in the process and was familiar with the operation and with the kind of team in which the bale was brought. According to the plaintiff's evidence, the section foreman ordered him and Wheeler, another member of the gang, to get on the team at the further end of the bale and assist in pushing the bale forward, using hooks to grapple it, while the men in front should pry up the end of the bale by means of a truck, and others should grapple with hooks in front and pull. The first

time the bale was pried up with the truck, the pressure on the rear of the wagon drove the wagon forward a few inches, while the plaintiff was standing on the front part of it. Grady then told the teamster to trig or block his wheels, and the teamster then descended to the ground, backed up the team, and went through the operation of trigging his wheels, and the unloading was resumed. Then the teamster again got off his wagon and lowered the tail-board until it was level with the floor of the wagon; the end of the tail-board then being within a few inches of the house, and six inches below the level of the sill. Some of the men in the door of the house then inserted the end of a truck into the end of the bale, bearing down on the truck, thus raising the end; others inserted their hooks and pulled, and the plaintiff and Wheeler, standing in the wagon, inserted their hooks into the rear end of the bale and pushed. In this way the bale was advanced a few inches, and the operation was repeated several times, the truck being inserted under the end of the bale.

About ten minutes was consumed in this way, during which time the bale had been moved so that about three feet of it rested upon the sill and floor of the freight-house, the other end still resting on the floor of the wagon. The floor of the wagon extended some two and a half or three feet behind the axle of the rear wheels, and the tail-board extended about one foot and a half farther. The spaces between the sides of the bale and the sides of the wagon were only a few inches, and not enough for a man to stand in. When the end of the bale had been carried three feet into the house, the plaintiff and Wheeler were standing at the rear corners of the bale, with their hooks inserted in the rear of the bale, and at the signal from Grady all of the men made one final effort to push the bale in the rest of the way, the men in the house at the same time prying the bale up so as to ease it over the sill. Just as they began their effort the bale and the men being on the wagon, as before stated, the rear of the wagon settled down and the bale fell between the house and the wagon, and the wagon shoved out into the street, both men falling to the ground with the bail, which fell over upon the plaintiff and caused the injuries complained of. It also appeared that there was a gang plank near by which might have been used, and which, if used, would have prevented the accident.

The plaintiff testified that Grady checked the freight, and ordered the men in the gang where to load it; and that they received their orders from him.

Charles E. L. Wheeler, called as a witness by the plaintiff, testified that Grady directed the members of the gang what to do, and no other person assumed to direct them when Grady was there; that, when they had got a proper amount of freight which Grady thought ought to be loaded, he took the receipts and looked the freight over and saw that he got what the receipt called for, and then he put the initials and number of the car that was loaded on to that receipt, and directed the men what to do with it; that he directed the unloading of the bale at the time of the accident; and that it was the general practice of Grady, as well as of the other foremen, when a team had a heavy load, to send men to help take it off.

Grady testified, for the defendant, that he was checking clerk for the defendant at the time of the accident; that he was connected with the gang of what they called section one, composed of five men, and was the " section boss"; and that his duties were to take receipts and check the freight into the cars, and see that it was loaded into the right cars.

On cross-examination, he testified that these men obeyed his orders with regard to loading the freight into the cars; that he was the only person who gave directions about that; that it was a part of his duty to see that it was loaded properly; that it was for the foreman of the house to decide which men should tip on and which men should wheel in; that the witness had no power to arrange matters in that way with the men; that he merely checked the freight for them, and told them to load it; that if the foreman wanted to put a man tipping on the freight he could do so, and if he wanted to put a man in a car he could do so; that the witness had nothing to say about it; that he had never given any such direction as that; and that he had told the men to wheel freight, and, if there was a man off, he would take one of these and put him to tipping on freight until the regular tipper-on should come.

. Grady further testified as follows:

" *Q.* Did the driver of the team make any request of you in regard to unloading the team?    *A.* Yes, sir; he came down and

asked me if I would not get him a man or two to help him get his bale off.

" *Q.* In consequence of that, what did you do? *A.* I turned round, and I said, ' A couple of you fellows go down and give this man a hand, and get his bale off.'

" *Q.* What did they do in consequence of that? *A.* Some of them went down.

" *Q.* Did you go down there at all while these men were attempting to unload this bale? Did you go down to the door where they were? *A.* Yes, sir; I went down there once or twice, I believe.

" *Q.* Did you give any directions to the plaintiff, or any of the men, with reference to the manner in which they should do that work at that particular time? *A.* I don't remember of giving any orders to any man as to what he should do."

Thomas Croke testified that, at the time of the accident, he was tipping freight upon the trucks; and that he and the other men in the gang were given their orders by Grady.

At the close of the evidence, the defendant asked the judge to rule that there was no evidence to go to the jury, and to direct a verdict for the defendant. The judge declined so to do; and the defendant excepted.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*F. A. Farnham,* for the defendant.

*R. Lund,* for the plaintiff.

KNOWLTON, J. The questions raised by this bill of exceptions and argued by the defendant are three: first, whether there was evidence to warrant a finding that Grady, the section foreman, was a person whose sole or principal duty was that of superintendence within the meaning of the statute; secondly, whether there was evidence that the plaintiff was in the exercise of due care; and thirdly, whether there was evidence of negligence on the part of the defendant.

It appeared that Grady was a section foreman having immediate charge and superintendence of a gang of five men. It was his duty to take receipts, check the freight into the cars, and see that it was loaded into the right cars. These five men were working all the time under his direction in handling the freight.

The jury might well find that his principal duty was that of superintendence.  *Malcolm* v. *Fuller,* 152 Mass. 160, 166.  *Prendible* v. *Connecticut River Manuf. Co., ante,* 131.

The cause of the accident seems to have been that the weight of the bale of burlaps and the weight and force of the men standing on the wagon and lifting depressed the hind end of the wagon, which turned on the axle as a fulcrum and lifted up the forward end so as to let the bale fall to the ground between the wagon and the building.  The floor of the wagon extended two and one half or three feet behind the axle, and the tail-board extended about one and a half feet farther.  It would seem that the accident was an unusual one, and we are of opinion that, upon all the evidence, it was a question of fact for the jury whether the plaintiff was in the exercise of due care in lifting at the bale as he did.  He was acting under the orders of Grady, and he had a right to trust somewhat to him to look out for his safety in determining where and how to work in unloading the bale.  It does not appear that the plaintiff was doing anything which would generally be deemed careless by prudent men, and we cannot say, as matter of law, that he was not in the exercise of due care.

The question whether there was evidence of negligence on the part of the defendant's superintendent is one of more difficulty. There is good ground for saying that this was a pure accident, for which nobody was to blame ; but we cannot say that as matter of law.  The mere happening of an accident, if it is one that the exercise of ordinary care would commonly prevent, is some evidence of negligence.  *White* v. *Boston & Albany Railroad,* 144 Mass. 404.  Grady, the superintendent, had the responsibility of determining how the bales should be loaded.  It was proved that there was a gang plank near by which might have been used, and which if used would have prevented this accident. The jury may have found from the evidence that, if the wheels of the wagon had been more securely trigged or scotched, it would not have moved forward from the pressure, and the accident would not have happened.  It was the duty of Grady, who ordered the men to unload the bale, to take all reasonable precautions to insure their safety.  In this respect his relation to the work differed materially from that of the plaintiff and the

other men.  The plaintiff had a right to assume that the wheels were properly trigged, and that the method selected by the foreman for unloading was safe and proper.  Upon all the circumstances of the case, whether he used due care in setting his men at work as he did, and whether he took proper precautions for their safety, were questions of fact; and there were circumstances to sustain the plaintiff's contention that he did not.

We are of opinion that the case was rightly submitted to the jury.                              *Exceptions overruled.*