the original certificate, or his successor in office, written or stamped across the face of the certificate over his signature. There are certain other restrictions in the law making the certificate subject to forfeiture after such consent is given in certain cases. The spirit and letter of the law seem to make the certificate subject to forfeiture for acts of the record holder of the certificate, his agents or servants, not only until the evidence of the transfers has been completed as above indicated, but also thereafter.

The authorities seem to decide that a liquor tax certificate is a property right, but subject to forfeiture by reason of violations of the law by the record holder of the certificate or his agents and servants. Assuming that the alleged assignee in this case acquired some interest in the certificate, that interest was subject to defeat by the commission of illegal acts by the record holder of the certificate. The claim is that the assignment was for collateral security, and hence it contemplated the continuance of the business by the holder of the certificate and the subjectivity of the certificate to cancellation for illegal acts of the holder of the certificate. There is no reason why the alleged assignee should be made a party to the proceeding. If the state authorities and the holder of the certificate should conspire to procure the cancellation of the certificate, in order to defraud the alleged assignee, it would have an ample remedy. No application is made by the West End Brewing Company to intervene. Matter of Cullinan (Santoro cert.) 94 App. Div. 445, 88 N. Y. Supp. 164, cited by the respondent, has no application.

An order may be entered canceling the certificate.

(55 Misc. Rep. 579)

OZOGAR v. PIERCE, BUTLER & PIERCE MFG. CO.

(Supreme Court, Trial Term, Onondaga County. August 20, 1907.)

1. WORDS AND PHRASES—"BOSS."
    In common parlance, the word "boss" is applied to a person who gives orders and who directs or controls.
    [Ed. Note.—For other definitions, see "Words and Phrases," vol. 1, p. 847.]

2. MASTER AND SERVANT—EMPLOYER'S LIABILITY ACT—SUPERINTENDENCE.
    Under Employer's Liability Act, Laws 1902, p. 1748, c. 600, making a master liable for injuries to a servant resulting from the negligence of a person acting as superintendent with the authority of the employer, such superintendent does not become the alter ego of the master in respect to all things which he may do in the master's service, or when performing work of another employé which is not in its nature work of superintendence, when he becomes a fellow servant of his co-employés.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 371–373.]

3. SAME—"SUPERINTENDENCE."
    Plaintiff was injured by the alleged negligence of the boss of defendant's machine shop, to whose orders plaintiff was subject, in directing plaintiff and his co-employés to lower an iron flask by hand. The boss did not work with his hands, nor assist the men, but watched when they were going to let the flask down. When the men asked for a crane, he refused, and at the time of the accident was directing their movements. Defendant was not shown to have a "superintendent" designated as such,

and it did not affirmatively appear that the boss was acting with defendant's "authority and consent." *Held*, that the boss was exercising "superintendence," within Employer's Liability Act, Laws 1902, p. 1748, c. 600.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 371-373.]

Action by Andrew Ozogar against the Pierce, Butler & Pierce Manufacturing Company. On plaintiff's motion on the minutes to set aside a nonsuit. Granted.

Motion by plaintiff upon minutes to set aside nonsuit. The defendant is a domestic manufacturing corporation engaged, among other things, in operating a foundry, a machine shop, etc. The plaintiff had worked for the defendant 12 years, and on the 26th day of July, 1905, worked in the defendant's machine shop. One Ross was the boss, or foreman, of the machine shop, and superintended the work of the men employed therein. On the 26th day of July, 1905, the plaintiff and six other employés of the defendant, acting under the direction of Ross, were engaged in lowering by hand a heavy casting known as a flask about 5½ feet long, 4½ feet wide, and 8 inches thick, from a position where it rested on one of its 8-inch sides to a position where it would lie flat, when the flask fell because it was too heavy for the men to hold, and in falling crushed one of the plaintiff's legs. The customary and proper way to handle a flask of that kind was by the use of a crane. The plaintiff and the other men engaged with him in lowering the flask objected to performing the work, and stated that it should be lowered by the use of the crane; but the crane was at that time temporarily in use, and Ross directed them to lower the flask by hand. The plaintiff brought this action to recover for the injuries thus sustained under the employer's liability act.

Thomas Hogan, for plaintiff.
White, Bond & Schoeneck, for defendant.

DE ANGELIS, J. I think it can be fairly said that, if the case had been submitted to the jury, it could have found that the plaintiff's injuries were due to the negligence of Ross in the performance of an act of superintendence.

The English Employer's Liability Act, St. 43 & 44 Vict. c. 42, 1880, seems to be the model upon which employers' liability acts in this country have been formed. Massachusetts adopted such an act in 1887 (St. 1887, p. 899, c. 270), which, as amended in 1894 (St. 1894, p. 614, c. 499), seems to have been largely incorporated into our act, which was passed in 1902 (Laws 1902, p. 1748, c. 600). The design of this legislation was to limit the law known as the "fellow servant law," referred to, perhaps somewhat inaccurately, as the "common law" on the subject. Prior to this legislation, in England, Massachusetts, and this state, negligence in superintendence resulting in injury to a servant did not make the master liable, upon the fellow-servant doctrine, provided the servant of the common master performing the negligent act of superintendence was a competent servant, whatever might be his grade in the common employment.

The Massachusetts courts adopted this language:

"It is settled in this commonwealth that all servants employed by the same master in a common service are fellow servants, whatever may be their grade or rank." Rogers v. Ludlow Mfg. Co., 144 Mass. 198, 203, 11 N. E. 77, 59 Am. Rep. 68.

Judge Holmes, discussing acts of superintendence in Kalleck v. Deering, 161 Mass. 469, 470, 37 N. E. 450, 451, 42 Am. St. Rep. 421, said:

"Ordering the plaintiff to use the faulty triangle was an act belonging to the superior officer as such, and it might be that as to that a different rule would apply. Looking at the reason given for the exception to the general liability of masters for servants, the last suggestion cannot prevail. If the sailor takes the risk of a negligent injury to his person from a fellow sailor, there is equal reason to say that he takes the risk of a negligent command. A command is a transitory act which the employer has no chance to supervise. It is not like a permanent condition of land or machinery, or the abiding incompetence of an employé. * * * If the defendants have been guilty of no personal negligence, and the plaintiff does take the risk of the negligence of some persons with whom his work will bring him into contact, the question whether the negligence of one of those persons is within or outside of the risks assumed is not a matter of names or dignities. That is too well settled to need the citation of cases. * * * The question is what he must be taken to have contemplated when he went into the employment. The chances of negligence on the part of a superior employed in the common business are as obvious as in the case of one of a lower grade, and therefore, when the duty is not personal to the employer, the same rule applies, whatever the degree of the negligent employé."

To the same effect is McGinty v. Athol Reservoir Co., 155 Mass. 183, 29 N. E. 510.

Since the passage of the employer's liability act, superintendence seems to have been added to the master's duties and taken from the category of assumed risks. Mahoney v. N. Y. & N. E. R. R. Co., 160 Mass. 573, 36 N. E. 588; Crowley v. Cutting, 165 Mass. 436, 43 N. E. 197. Before the passage of the employer's liability act in this state, the master was not liable to a servant for negligent superintendence if the person exercising superintendence was competent. Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905; Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021. Since the adoption of the employer's liability act in this state, superintendence has been added to the category of masters' duties and removed from the fellow servant doctrine. Faith v. N. Y. C. & H. R. R. Co., 109 App. Div. 222, 95 N. Y. Supp. 774, affirmed in 185 N. Y. 556, 77 N. E. 1186. This condition of the law does not make a superintendent or foreman the alter ego of the master in respect to all things which he may do in the master's service. When he performs the work of another employé of the master which is not in its nature work of superintendence, he becomes a fellow servant with the other employés, and his acts are subject to the fellow-servant doctrine. The Massachusetts cases afford very satisfactory authority upon this proposition.

In Cashman v. Chase, 156 Mass. 342, 344, 31 N. E. 4, the court said:

"The employer is not answerable for the negligence of a person intrusted with superintendence, who at the time, and in doing the act complained of, is not exercising superintendence, but is engaged in mere manual labor, the duty of a common workman. The law recognizes that an employé may have two duties: That he may be a superintendent for some purposes, and also an ordinary workman; and that, if negligent in the latter capacity, the employer is not answerable. * * * Unless the act itself is one of direction or of oversight, tending to control others and to vary their situation or action because of his direction, it cannot fairly be said to be one in the doing of which the person intrusted with superintendence is in the exercise of superintendence."

See, also, Joseph v. George C. Whitney Co., 177 Mass. 176, 58 N. E. 639; Hoffman v. Holt, 186 Mass. 572, 72 N. E. 87.

It seems to me, as I have already stated, that Ross in this case was performing superintendence service, and in that service was negligent. To establish a liability against the defendant within the terms of our employer's liability act, it must have appeared that Ross was a "person in the service of the employer entrusted with and exercising superintendence whose sole or principal duty" was "that of superintendence, or in the absence of such superintendent," a "person acting as superintendent with the authority or consent of such employer." It is reasonably clear that the Legislature, by the adoption of the language quoted, did not intend to narrow the meaning of the word "superintendence" down to what might be done by a person whose official designation was that of "superintendent." In common parlance, "boss" is applied to a person who gives orders, who directs, who controls. The evidence was that Ross was the boss of the machine shop; that he gave all orders. It did not appear that he worked with his hands. It did appear that he did not assist the seven men who were attempting to lower the flask. He "watched when they were going to let it [the flask] down." When the men asked for the crane, he refused to let them have it, and directed them to lower the flask by hand. At the time of the accident, Ross was directing the work of seven men. It does not appear that the defendant had a superintendent designated as such, nor does it appear affirmatively that Ross was acting "with the authority or consent" of the defendant; but I think it may fairly be inferred from the evidence that he was acting with such authority and consent.

In the application of the new feature in the duties of the master involved in superintendence, we come face to face with the difficulty to determine whether the facts of a given case bring it clearly within the operation of the new law, or leave it clearly outside of the new law, and that indefinite border land where the advocate for the servant may play unduly upon the sympathy, or the advocate of the master may appeal unduly to the conservatism, of the court. So long as human tribunals shall exist for the settlement of questions of this nature, that border land will present to the coldly scientific observer conflicting decisions.

A foreman in charge of five men was held to be exercising superintendence. Mahoney v. N. Y., etc., R. R. Co., 160 Mass. 573, 36 N. E. 588. A foreman in charge of a gang of seven men was held to be performing superintendence service. McPhee v. Scully, 163 Mass. 216, 39 N. E. 1007; McBride v. N. Y. Tunnel Co., 101 App. Div. 448, 92 N. Y. Supp. 282; Faith v. N. Y. C. & H. R. R. Co., 109 App. Div. 222, 95 N. Y. Supp. 774, affirmed in 185 N. Y. 556, 77 N. E. 1186; and Mikos v. N. Y. C. & H. R. R. Co., 118 App. Div. 536, 102 N. Y. Supp. 995—seem to me to be authorities upon which this case, as the proofs stood, should have been submitted to the jury. Vogel v. American Bridge Co., 180 N. Y. 373, 73 N. E. 1, 70 L. R. A. 725, has no application, because the action was not brought under the employer's liability act.

Nonsuit set aside, and new trial ordered, with costs to abide the event.