EAST CHICAGO FOUNDRY COMPANY *v.* ANKENY.

[No. 2,106.  Filed Oct. 12, 1897.  Rehearing denied Jan. 27, 1898.]

COMPLAINT.—*Sufficiency.*—*Personal Injuries.*—*Negligence.*— A complaint against a foundry company for damages for personal injuries which alleges that defendant excavated a large molding pit and permitted same to remain open and unsupplied with lights or signals and without guards or railing around it, and that plaintiff in the performance of his work without any carelessness on his part, on account of the darkness and color of the floor of the foundry, walked into the pit and thereby sustained the injuries complained of, is sufficiently specific and states a cause of action against defendant.  *pp. 151, 152.*

SPECIAL VERDICT.—*Contributory Negligence.*—The findings in a spec-

East Chicago Foundry Company *v.* Ankeny.

ial verdict in the trial of an action by an employe against a foundry company for damages for personal injuries received by falling into a molding pit left open and unguarded by defendant, that plaintiff did not look on the ground ahead of him as he approached the pit, and that if he had carefully watched where he was stepping he would not have walked into the pit; that there was a rim from four to ten inches in height around said pit which plaintiff could have seen, if he had been looking down and ahead of him, and that the pit was one of the usual appurtenances of foundries such as defendant's, will not support the necessary conclusion that plaintiff was free from fault approximately contributing to his injury. *pp. 152, 153.*

From the Porter Circuit Court.     *Reversed.*

*J. W. Youche*, for appellant.

*A. F. Knotts* and *E. D. Crumpacker*, for appellee.

COMSTOCK, J.—This was a suit by appellee, Ankeny, against the appellant, East Chicago Foundry Company, to recover damages sustained by him by reason of falling into a molding pit in appellant's foundry at East Chicago. The complaint was in one paragraph. To the complaint the appellant filed a motion to require that it be made more specific, which was overruled and appellant excepted, and filed a demurrer for want of facts to the complaint, which demurrer was overruled and exception taken, and then answered by general denial.

Upon the issues thus formed, the case was submitted to a jury and a special verdict returned, upon which each party moved for judgment. The court below overruled appellant's motion for judgment, to which appellant excepted, and sustained appellee's motion and rendered judgment in appellee's favor, and appellant again excepted.

The errors assigned are, (1) the overruling of the motion to make the complaint more specific; (2) the overruling of the demurrer; (3) the refusal to render judgment in appellant's favor, and (4) the rendering of judgment in appellee's favor.

East Chicago Foundry Company *v.* Ankeny.

The complaint, in substance, sets forth that on March 29, 1895, the appellant was a foundry company engaged in the molding business, operating said business at East Chicago, in which the appellee, a molder, and other workmen, were employed; that in conducting and carrying on the work at its said foundry, the appellant, prior to March 29th 1895, dug and excavated a large molding pit about fifteen feet deep, which appellant negligently permitted to remain open and uncovered and unsupplied with lights or signals so that it could not be seen, and without guards or railing around the same, and on said day, while working near said pit, in the performance of his duties, plaintiff started to get some flour to be used about his work, and without any knowledge or notice of the existence of said pit, on account of the darkness and the color of the floor of said foundry, and not being able to see said pit, and without any carelessness on his part, walked into it, and thereby sustained the injuries complained of.

We think the complaint was sufficiently specific, and stated a cause of action, and, therefore, that the motion to make the same more specific and the demurrer thereto were properly overruled.

The other errors discussed relate to the sufficiency of the special verdict to support a judgment for appellee. The special verdict must find facts to show that appellee suffered the injury complained of by reason of the negligence of the appellant, and that he was guilty of no negligence approximately contributing to said injury.

Interrogatories sixty-three, sixty-four, sixty-five, sixty-eight, and sixty-nine, and the answers thereto constitute a part of the special verdict. Interrogatory sixty-three reads as follows: "Is it a fact that if the plaintiff in going after the flour if he had carefully looked on the ground ahead of him as he was

East Chicago Foundry Company *v.* Ankeny.

walking along could have seen the pit in time to have avoided falling into it? Answer: No." Interrogatory sixty-four: "Did the plaintiff at the time he approached the said pit, when he fell into it, carefully watch and look on the ground ahead of him as he was walking along? Answer: No." Interrogatory sixty-five: "If the plaintiff as he was walking toward said pit had carefully looked and watched where he was stepping would he have walked into said pit? Answer: No." Interrogatory sixty-eight: "Was there not at the time the plaintiff fell into said pit a rim from four to ten inches in height around said pit, and could plaintiff, if he had been looking down and ahead of him, have seen said rim before walking or stepping into said pit? Answer: Yes." Interrogatory sixty-nine: "Was not such a pit as plaintiff fell into one of the usual appurtenances in connection with foundries such as the defendant's foundry in controversy? Answer: Yes."

We think it cannot be said in view of the facts thus found in answer to these interrogatories that the plaintiff was exercising the care incumbent upon him under the circumstances. For this reason, the judgment must be reversed. We are of the opinion, however, because of the conflicting findings of the jury, that the ends of justice will be best subserved by granting a new trial. The court below is instructed, if a motion for a new trial is filed within sixty days, to sustain the same. Otherwise, to render judgment for appellant.

ON PETITION FOR REHEARING.

COMSTOCK, J.—It is the opinion of the court, after a reexamination of the record upon the petition for rehearing, that the petition should be overruled. It is believed that the reasons set out in the original opin-

ion fully warrant the conclusions therein reached. We deem it proper, however, to refer to some additional facts found by the special verdict. The building in which appellant's foundry was operated was one story high, 120 feet wide and 180 feet long, in which from thirty to forty men were employed. Appellee was employed as a molder in said foundry from March 18th to March 29th. His regular place of work was fifty feet to the southeast of said pit. It does not appear that his view of the said pit was obstructed from said point, although there were obstructions near the pit interfering with the admission of light from the outside. The pit was eleven feet in diameter, with a rim around it six inches high; it was an ordinary appurtenance of foundries of the kind operated by appellant. There is nothing in the verdict to show that appellee was inexperienced, or was unacquainted with the appurtenances of such foundries. Just before receiving his injury he was at work fourteen feet from the pit, and between him and it there were no obstructions. He is presumed to have been possessed of ordinarily good eye sight, and the law requires one who asks damages on account of the negligence of another to show that he has exercised his natural senses with ordinary diligence under the circumstances to avoid injury. The imperfect light at the time of the accident made this obligation all the stronger. We have not lost sight of the rule that the entire verdict and not isolated findings are to be considered, but have deemed it necessary to refer only to those inconsistent with one another and with the proposition that appellee was free from contributory negligence.

East Chicago Foundry Company *v.* Ankeny.

## DISSENTING OPINION.

BLACK, J.—Being of the opinion that the appellee has shown good reason for a rehearing of this cause, it seems proper in explanation of this conclusion that I should take space to show the findings of the jury in the special verdict, omitting formal portions of the verdict, and many parts of it relating to the negligence of the appellant, and numerous conclusions to the effect that there was no negligence on the part of the appellee.

It was found that the appellant's foundry building was 120 feet wide and 180 feet long. From thirty to forty men were employed in it. The floor was composed of earth and covered with molding sand of a dark brown color. The pit into which the appellee fell was near the center of the foundry. It was an open pit, about eleven feet in diameter and twelve to fifteen feet deep. Its margin was substantially on the same level as the floor of the foundry, except that there was a flange around the pit about six inches high. The pit was entirely without any covering or railings or guards around it. There were large lifting cranes, a partition, brick ovens, boxes, flasks, and other structures situated about the pit in such a way as to obstruct in a large measure the light from the windows in the building.

The appellee was employed by the appellant on the 18th of March, and the injury occurred on the 29th of the same month. He was employed to work as an iron molder in the foundry. It was a part of his duty to assist other molders in the foundry in doing certain work, when called upon by them. His regular station in the foundry was on the east side, and he worked there all the time, except on the one occasion, on the 29th of March, when he was

called to assist one Metcalf, another molder. On that day he was engaged in the line of his employment; Metcalf called upon him to assist in a piece of work in the foundry about 4 p. m. on that day. Metcalf at the time was performing work for the appellant. The appellee undertook to assist Metcalf in said work in pursuance of said call, and it was his duty to do so under the terms of his employment with the appellant. While so assisting he had occasion to use some flour in connection with the work in hand, and he undertook to go to another part of the foundry about twenty-five feet distant to get some flour so to use. While so proceeding to get some flour he fell into the pit and was injured. Metcalf was engaged, while appellee was so assisting him, about twenty feet from the pit. The flour which the appellee started to get was on the opposite side of the pit from the place where he was so assisting Metcalf. The appellee before he started for the flour had been assisting Metcalf for only about ten minutes. He was proceeding in a direct line toward the flour when he fell into the pit. He did not know of the existence of the pit. Neither the appellant nor any other person had informed the appellee of its existence. His said regular station was about fifty feet southeast from the pit. It was dark and cloudy weather at the time he fell into the pit. There were a large lifting crane, about six feet southwest of the pit, a core oven, about sixteen feet wide and ten feet high, west of the pit, a partition through the building north of the pit, and another core oven ten feet high and twelve feet wide east of the pit. These structures obscured the light from the windows and cast a shadow over the pit. It was so dark and gloomy at and around the pit that it was impossible to distinguish it from the floor of the foundry, by ordinary observation, and it

was impossible to distinguish the mouth of the pit from the floor around it without stopping and scrutinizing very closely and cautiously the surface of the floor and surroundings. There was no lamp or artificial light at or about the pit. The floor was dark, and the opening of the pit presented the same appearance as the floor. The appellee was engaged in the line of his employment when he fell into the pit. It was found in the verdict that he was exercising as much care for his own safety as a man of ordinary prudence would have exercised under the same circumstances. His duty while engaged with the appellant did not call him into the vicinity of the pit so that he was able to see it at any time before he was so injured, and he had not before gone into its vicinity. He did not see the pit before he fell into it. He was injured because of the appellant's failure to provide the pit with guards or railings, or sufficient light so that it could be seen. He fell headlong into the pit and struck his head and right shoulder on the bottom of the pit. It was further found that by the exercise of ordinary care and watchfulness he could not have seen or become aware of the existence of the pit before his injury, and no information had come to his knowledge which was calculated to suggest to the mind of a man of ordinary prudence the fact that there might be a pit at or in the neighborhood where this pit was. It was about two hours before sun down. He was getting the flour for the appellant. The space between where Metcalf was working and the pit was level and unobstructed.

Among the numerous interrogatories and answers in the special verdict were the following:

"(63) Is it a fact that if the plaintiff in going after the flour, if he had carefully looked on the ground as he was walking along, could have seen the pit in

time to have avoided falling into it? Ans. No." "(64) Did the plaintiff at the time he approached said pit, when he fell into it, carefully watch and look on the ground ahead of him as he was walking along? Ans. No." "(65) If the plaintiff, as he was walking toward said pit, had carefully looked and watched where he was stepping, would he have walked into said pit? Ans. No." "(67) Is it a fact that at the time plaintiff fell into said pit it was light enough so that if he had been carefully looking and watching he could have seen or become aware of said pit before stepping or walking into it? Ans. No." "(68) Was there not at the time plaintiff fell into said pit a rim from four to ten inches in height around said pit? and could plaintiff if he had been looking down and ahead of him have seen said rim before walking or stepping into said pit? Ans. Yes." "(69) Was not such a pit as plaintiff fell into, one of the usual appurtenances in connection with such foundries such as the defendant's foundry in controversy? Ans. Yes."

It clearly appears from the verdict that the appellee was not acquainted with the existence of the pit. If it had been absolutely dark, it might have amounted to a want of ordinary care to go for the flour without taking an artificial light, or without feeling his way and carefully examining the floor where he was stepping. But it was not absolutely dark. It was gloomy, and the place where he was walking was in shadows. Yet he could see his way. The floor was dark, and there was no warning contrast between its appearance and that of the opening into which he fell. We can not say as a matter of law that it was a want of due care for him to walk where he did without looking at the ground, or watching where he was stepping, or failing to see the rim of whose existence he did not know; to require such vigilance might be holding him

to the exercise of extraordinary care and imposing upon him a risk which he did not assume. Taking all the findings together, it seems plain that in those answers of the jury quoted, relating to looking down at the floor and watching where he was stepping, they did not intend to contradict their other findings in such a sense as to make those answers incompatible with their other findings. It will be observed that the interrogatory numbered sixty-eight is double, one part susceptible of an affirmative answer, while the other might have been answered in the negative. It is our duty to harmonize the different parts of a special verdict, if possible. We should not conclude that there are contradictions therein if we can find that in the sense in which the jury understood the language employed there is not incompatibility. We should not make the jury stultify itself by forced contradictions which violate their manifest intention. The jury may often be skillfully drawn into apparent contradictions, while their meaning as indicated in the entire verdict is consistent. It was not, as I understand, held by this court on the original hearing that it was a want of care incumbent upon him as an employe for the appellee to fail to look at the ground, or to fail to watch where he was stepping, or to fail to see the rim. The judgment was reversed, and a new trial was ordered, not because the verdict does not show the appellant's failure to provide a reasonably safe place in which to work, or because it does not appear that the appellee did not assume the risk, or because it is not shown that he proceeded with due vigilance and care, but because of alleged contradictory answers, which well might be given again to like questions understood by the jury in such a sense that the answers thereto would not be inconsistent with the other findings by which it sufficiently is shown that

the appellee was entitled to recover.  But now, in overruling the petition for a rehearing, it is intimated that the verdict does not show that the appellee was free from fault, in that he does not appear to have exercised his natural faculties with ordinary diligence, or perhaps that it is shown that he must have seen the danger if he had exercised his natural faculties with ordinary prudence, and that he was injured by reason of an excavation the danger·from which was an assumed risk.  This would seem to be a discrediting of the special verdict, not by way of comparing the findings of the jury with the evidence, but by way of disregarding ultimate facts which it was within the province of the jury to find.

While it is found that such a pit was one of the usual appurtenances in connection with such foundries, it does not necessarily follow that in this instance the master furnished a reasonably safe place to work, or that the appellee assumed the risk.

If it can be said that it appears from the verdict that the appellee assumed the risk of injury in the manner in which he was injured, the mandate should have been, not for a new trial, but for judgment in favor of the appellant.  The judgment of the trial court, as it now appears to me, was supported by a sufficient verdict.

### DISSENTING OPINION.

WILEY, J.—I concur with Black, J., in his dissenting opinion on the petition for rehearing.  Although I agreed to the original opinion, which is still adhered to by a majority of the court, yet upon a reexamination of the case, and a more careful consideration of all the facts disclosed by the special verdict, it is my deliberate opinion, that the conclusion reached and announced in the original opinion, is in conflict with

East Chicago Foundry Company *v.* Ankeny.

the facts found and does not correctly declare the law applicable to such facts. It is my judgment that the special verdict, taken and considered as a whole, is not ambiguous, uncertain, contradictory, or defective, but is amply sufficient to support a judgment for appellee. A special verdict is not to be dealt with in disconnected fragments, but is to be treated as an entirety. This rule is elementary. *Louisville, etc., R. W. Co.* v. *Balch,* 122 Ind. 583.

The Supreme Court has declared the rule to be, that verdicts should not be defeated by technicalities, but should be given a reasonable interpretation, taken as a whole. *Woodward* v. *Davis,* 127 Ind. 172; *Clark* v. *Clark,* 132 Ind. 25.

It is urged by appellant, and so held by a majority of the court, that interrogatories sixty-four, sixty-five, and sixty-eight, and the answers thereto, and which are copied in full in the original opinion, show that appellee was guilty of negligence, contributing to his injury, and hence he was not entitled to judgment. It may be truly said that these interrogatories, taken and construed by themselves, would lead to that conclusion, but when considered and construed with others, it seems to me, that they can easily be reconciled with appellee's freedom from fault. While the verdict finds that the pit into which appellee fell, was a necessary appurtenance to the business in which appellant was engaged, it is not shown that such pit had to be situated in any particular place, while it is clearly shown that appellee did not know that it was situated where it was, that he even did not know of its existence or that he was in danger of falling into it. At the time of his injury, he was in the line of his duty, and discharging his obligation to his employer. The jury found that he was using all due

care commensurate to his surroundings and knowledge. He was not bound to exercise extraordinary care, but such care as an ordinarily prudent man would exercise under like circumstances. And if the interrogatories sixty-four, sixty-five, and sixty-eight have any significance at all, they relate to the exercise of extraordinary care, and no such obligation rested upon appellee. While appellee, in company with his co-employe, was in the line of his duty, and on his way to get the molding flour, he was walking carefully, as found by the jury. The floor of the building was covered with dark sand, much of the natural light was shut out and obscured by certain obstructions; there were no artificial lights to guide him on his way; the floor of appellant's foundry, and the mouth or opening of the pit, presented the same general appearance; he had no notice or warning of danger, and under these conditions, circumstances, and surroundings, he was not, in my opinion, required to use extraordinary care in selecting a particular place of safety for his feet, at each step, for he had a right to presume that his employer had provided a safe place for him to discharge his duty to it. The jury found that it was so dark and gloomy at and around the pit, that it was impossible to distinguish it from the floor of the foundry, by ordinary observation. Such finding is equivalent to finding that it was impossible to distinguish the pit from the floor, except by extraordinary care and observation, and such care and such observation were not incumbent on appellee. The jury further found that it was impossible to distinguish the mouth of the pit from the foundry floor around it, without stopping and scrutinizing very closely and cautiously the floor and surroundings, and this, as we have seen, appellee was not required to do. Interrogatories six-

ty-four, sixty-five, and sixty-eight interpreted in the light of these and other kindred facts found, are not, in my judgment, in conflict with such other facts, which clearly show appellee was free from fault. I regret to differ from the majority of my associates, but am impelled to do so by a high sense of duty, and feel fully justified in thus briefly expressing my views, why in my judgment, the petition for a rehearing should be granted.