Guedelhofer *v.* Ernsting.

GUEDELHOFER *v.* ERNSTING.

[No. 2,698. Filed November 1, 1899.]

VERDICT.—*Special Findings.—Conflict.*—The general verdict will be upheld unless the facts found and stated in the special findings are so antagonistic to the general verdict as to preclude reconciliation. *p. 191.*

MASTER AND SERVANT.—*Defective Machinery.—Knowledge of Danger.* —A manufacturing company is not chargeable with actionable negligence on account of its failure to place guards over the revolving knives of a wood jointing machine in order to protect the operator, where the danger was open and obvious. *pp. 192-203.*

SAME.—*Notice of Danger.*—Negligence cannot be based upon the failure of an employer to warn an operator of a wood jointing machine of the increased danger incident to planing a small stick of timber. *pp. 192-203.*

VERDICT.— *Special Finding.— Conflicts. — Master and Servant.— A* general verdict for plaintiff on an allegation of the complaint charging that defendant was negligent in not warning plaintiff of the increased danger in operating a wood jointing machine while planing short, narrow, and thin pieces of lumber, as compared to larger and heavier pieces is in irreconcilable conflict with a special finding that such increased danger was as apparent to plaintiff as to defendant. *pp. 203-207.*

From the Marion Superior Court. *Reversed.*

W. A. Ketcham, S. N. Chambers, S. O. Pickens, C. W. Moores and F. E. Malson, for appellant.

D. W. Howe, J. R. Morgan and L. A. Morgan, for appellee.

Guedelhofer *v.* Ernsting.

WILEY, J.—This was an action by appellee against appellant to recover damages for an injury received, while in the employment of appellant, caused by the alleged negligence of the latter. The complaint, which is in one paragraph, avers that appellant owned and operated a factory, and was engaged in manufacturing and repairing wagons and other vehicles; that in carrying on said business, appellant had and used machinery of various kinds, which was propelled by steam; that a part of such machinery consisted of a jointer, constructed with an iron or steel top or table, about six feet long and about one foot wide, in the center of which was an opening about one foot in length and four inches wide; that immediately under said opening were revolving knives, so placed as to come in contact with lumber placed upon such table; that said jointer was operated by steam power communicated by wheels, pulleys, and other mechanical devices, so as to cause said knives to revolve with great rapidity; that the mode or plan of using said jointer was to place lumber on the table and push it along by hand and thus plane or cut it down to smaller dimensions; that when the jointer was in operation there was danger to the person operating it of his hand slipping from the lumber being pushed over said opening and falling upon the revolving knives; that said danger was very greatly increased in porportion as the piece of lumber was short, narrow, and thin, and because of the fact that a short, thin, and light piece of lumber was more violently jostled and more unsteady in passing over the knives than a thick and heavy piece would be, but that such danger was not obvious to any one who was not accustomed to the use and operation of the same; that there were no guards or apparatus or contrivance used in or about such jointer to prevent or guard against danger to the person operating it in case his hand should accidentally slip off the lumber being planed, and into said opening; that appellant well knew the danger incident to the operation of said jointer, and might easily have prevented or

guarded against the same by attaching guards which could have been attached at an expense of fifty cents; that appellee was employed by appellant, some time prior to the accident hereinafter described, to work in and about said factory; that appellee was then about twenty-one years of age, and had never been familiar with operating machinery of any kind, and had had no experience in the operation of jointers or other similar machinery, nor any knowledge of the danger thereto, all of which appellant well knew; that on December 10, 1895, while appellee was so employed, he was directed by appellant to take some pieces of timber and plane them upon said jointer; that said pieces were about twelve inches long and not over one and one-half inches square; that they were very greasy and slippery; that there was great danger to the workman who might undertake to plane them, but of such danger appellee had no knowledge or experience whatever; that appellant, well knowing said danger and appellee's ignorance thereof, nevertheless negligently failed to guard against the same in any way, and negligently failed to advise appellee thereof, or instruct him how to operate the jointer in such a way as to prevent or lessen such danger; that appellee, in pursuance to such directions, undertook to plane one of the pieces, and while so doing, and using due care, his hand, by reason of the jostling and unsteadiness of such piece of lumber in passing over the revolving knives and the "slipperiness" thereof, slipped from the same and into said opening and came in contact with the revolving knives, whereby he was injured, etc. The complaint concludes by averring that appellee's injuries were caused solely by the negligence of appellant, and without any fault or negligence on his part. A demurrer for want of facts was overruled, and appellant excepted.

The issues were joined by an answer in general denial, trial by jury resulting in a general verdict for appellee for $3,000, and with the general verdict the jury answered and returned certain interrogatories submitted to them.

Guedelhofer *v.* Ernsting.

Appellant moved for judgment upon the answers to interrogatories and for a new trial, both of which motions were overruled. The overruling of the demurrer to the complaint, the overruling of the motion for judgment on the answers to interrogatories notwithstanding the general verdict, and the overruling of the motion for a new trial, are each assigned as errors.

The first question discussed by counsel is the overruling of appellant's motion for judgment on the answers to interrogatories notwithstanding the general verdict. We enter upon the discussion of this question, with the rule in view, that the general verdict is a finding in favor of appellee, and against the appellant, upon every material fact necessary to the former's right to recover under the averments of his complaint, and that, unless some facts established by the special findings are in irreconcilable conflict with a fact material and necessary to the appellee's recovery, the general verdict must prevail. We must indulge every reasonable presumption in favor of the general verdict. *Rogers* v. *City of Bloomington*, 22 Ind. App. 601, and authorities there cited. Where, however, the interrogatories propounded to the jury, answered by them and returned with the general verdict, are in irreconcilable conflict with it, the former will control. In other words, the general verdict will be upheld unless the facts found and stated in the special findings are so antagonistic to the general verdict as to preclude reconciliation. *Ohio, etc., R. Co.* v. *Trowbridge*, 126 Ind. 391; *Toledo, etc., R. Co.* v. *Adams*, 131 Ind. 38; *Town of Poseyville* v. *Lewis*, 126 Ind. 80; *Rogers* v. *Leyden*, 127 Ind. 50; *Block* v. *Hazeltine*, 3 Ind. App. 491; *Evansville, etc., R. Co.* v. *Gilmore*, 1 Ind. App. 468; *Rogers* v. *City of Bloomington, supra.*

In *Korrady* v. *Lake Shore, etc., R. Co.*, 131 Ind. 261, Elliott, C. J., in delivering the opinion of the court, says: "Where the facts stated in an answer to an interrogatory are such as preclude a recovery, the court must so adjudge,

although answers upon other points may be favorable to the party who relies upon the general verdict. If facts are found which are fatal to a recovery, the court is bound to deny the plaintiff a judgment, whether such facts relate to one or to many points. A defendant who establishes a point which completely and effectually destroys the alleged cause of action must necessarily succeed." See, also, *Rice* v. *City of Evansville*, 108 Ind. 7; *Lake Shore, etc., R. Co.* v. *Pinchin*, 112 Ind. 592.

We turn now to the facts specially found to see if they, or any of them, are in irreconcilable conflict with the general verdict, and they are as follows: That appellee was twenty-one years old; that he had four or five years experience in working in hard wood such as used by appellant in his factory, such work having been done with hand tools; that his eyesight was good; that appellee commenced working for appellant in his factory September 1, 1895; that he received the injury complained of December 10, 1895; that his employment was continuous between said dates; that the jointer described in the complaint was in use when appellee commenced work for appellant; that it was continued in use all the time up to appellee's injury; that the jointer was the same as was in general use in planing mills and other wood-working establishments in Indianapolis; that the jointer was constructed with an iron or steel top or table about six feet long and eight inches in width, across the center of which was an opening two and one-quarter inches wide, beneath which opening were revolving knives, so placed as to come in contact with timber placed on the table; that the jointer was used by the workmen by putting the knives in motion, placing the timber to be planed on top of the table, and then pushing the timber with the hands upon and over the knives in the opposite direction to their movement; that, in using the jointer, the workmen would stand in front of the table and near the opening in which the knives revolved; that while appellee was in the employment of appellant there was

Guedelhofer *v.* Ernsting.

an adjustable gauge or guide attached to the top of the table; that there were slots and set screws at the back of such gauge by which it could be moved backward or forward so as to cover the whole length of the revolving knives, except that portion being used to plane with, and corresponding with the piece of timber being planed; that such gauge was four or five inches high and about two and one-half to three feet long; that the top of the table was about three feet high from the floor; that the adjustable gauge and the slots and screws. for its adjustment were open to the view of the workmen when standing in front of the top of the jointer while operating it; that such gauge could be moved by the workmen from the back to the front so as to shut off from the workmen all of the portion of the revolving knives not needed in planing a piece of timber; that there was no other guard or contrivance on or about the jointer to prevent or guard against danger; that the jointer remained in the same condition during all the time appellee worked for appellant; appellee knew there was no guard or contrivance on the jointer to prevent or guard against danger, except the adjustable gauge or guard above mentioned; that there was no other guard or contrivance on the jointer was open and obvious to the view of appellee when working upon the jointer; that when appellee was injured he was planing a piece of timber on the jointer about twelve inches long; that said piece of timber was greasy and slippery; that appellee knew it was greasy and slippery before he started it upon the knives; that appellee's hands came in contact with the knives by the reaction of the piece of timber; that, if appellee had known how, he could have placed the adjustable gauge which was on the jointer so as to shut off all the portion of the knives he was not using; that this would have had the same effect in preventing appellee's hand from coming in contact with the knives that any other guard which could have been used would have had; that during the time appellee worked for appellant he occasionally worked on the jointer; that the jointer was used

in appellant's factory to plane or dress down timber; that appellee saw the workmen thus using the jointer; that while appellee was in appellant's employment he had worked on sections of wagon felloes, wagon rims, bolsters, head blocks, buggy shafts, wagon tongues, and such pieces of timber as are ordinarily used in repairs of wagons, etc.; that he used the jointer to dress down and plane some of such pieces; that during the time appellee worked for appellant he used the jointer ten or fifteen times a week; that one of the pieces of timber appellee had dressed down was about the same size as the one he was working on when he was injured; that appellee commenced using the jointer about two weeks after he commenced work, and used it thence one to three times a day; that he had, prior to his injury, dressed and planed upon the jointer pieces of timber called head blocks from thirteen to eighteen inches long, from one to two and one-half inches thick, and from one and one-half to three inches wide; that he also dressed down and planed on the jointer wagon rims, about as long as half the circumference of a wagon wheel, from two to three inches thick, and from one to one and a half inches wide; that the times appellee worked on the jointer amounted to as much as one entire day; that if there was any danger to appellee while planing the piece of timber when he was injured it was due to the fact that his hands were close to the revolving knives of the jointer and the possibility of there being a knot or cross-grain in the timber; that immediately before his injury appellee had planed on the jointer a piece of timber of the same kind of wood and similar in size to the piece he was planing when he was injured; that a man of average intelligence working on the jointer would immediately learn that the revolving knives would offer resistance to a piece of timber being planed upon them; that a person of ordinary intelligence would learn the first time he worked on the jointer that it would be necessary to apply force to push a piece of timber across the knives and keep it in place;

Guedelhofer *v.* Ernsting.

that, while appellee was working for appellant, the latter
was engaged in manufacturing and repairing wagons and
other vehicles; that he had a machine which he used in his
business commonly called a jointer, upon which appellee was
injured; that appellee was employed by appellant as a
wagon-maker and wagon-repairer; that appellee was so
engaged when he was hurt; that appellee was a man of
ordinary intelligence; that prior to his injury appellee did not
know, nor could he have known by the exercise of ordinary
care and observation, that the adjustable guard could be
moved forward so as to cover that portion of the knives not
needed for planing the piece of timber which he was at
work upon when he was injured; that when the jointer was
in operation, there was danger to the workman operating
it of his hand slipping from the lumber being pushed over
the opening and falling on the knives; that in pushing a
short, narrow, and thin piece of timber over the knives it was
more liable to be violently jostled and to be more unsteady
than a thicker and heavier piece; that the danger to the
workman was increased in proportion as the piece of lumber
being pushed over the knives was short, narrow, thin, and
light; that the danger would have been lessened by a guard;
that such guard could have been used without interfering
with the jointer; that such guard could have been supplied
at an expense of fifty cents; that prior to appellee's injury
no such guard or apparatus was used about the jointer; that
prior to his employment by appellant, appellee had not been
accustomed to operating machinery of any kind; that prior
thereto appellee did not have any knowledge of the dangers
incident to the use of jointers; that when appellant employed
appellee, he (appellee) did know of the dangers incident to
the operation of such machinery; that on December 10,
1895, appellant's foreman directed appellee to take some
pieces of timber and plane them upon the jointer; that the
pieces of timber appellee was working on when he was in-
jured were about twelve or fourteen inches long and not

over two inches square; that the danger to the workmen who might undertake to plane such pieces on the jointer was not increased by reason of their being slippery and greasy; appellee was ignorant of the increased danger of planing such pieces by reason of their shortness and thickness; that appellant's foreman did not advise appellee of the increased danger on account of the shortness and thickness of the pieces; that appellee's hand was caused to slip and come in contact with the revolving knives, whereby he was injured, by reason of appellant's failure to use guards in connection with such jointer and also the failure of appellant to advise appellee of the increased danger by reason of the shortness and thickness of the pieces of timber, etc.

We have given a full statement of the facts specially found, to the end that the question under consideration may be fairly discussed. If we clearly understand the theory of the complaint, appellee plants his right of recovery upon two basic propositions: (1) That appellant was negligent in failing to provide a guard to be adjusted over the revolving knives, except that portion required for doing the work intended, at which appellee was engaged, so as better to protect him from danger; (2) that it was negligence on the part of appellant in failing to warn him or advise appellee of the increased danger to him incident to the particular work in which he was engaged, resulting from the size and length of the piece of timber he was planing when his injury occurred. As we have seen, the jury by their general verdict determined these alleged acts of negligence adversely to appellant. In other and more direct language, by the general verdict the jury found that appellant was negligent in the two particulars specified and as charged in the complaint. This finding by the general verdict must stand, unless facts are affirmatively established by the special findings which are so antagonistic to the facts established by the general verdict that the two can not be reconciled upon any reasonable hypothesis. It is not claimed in the complaint, or in

Guedelhofer *v.* Ernsting.

argument, that the jointer was in itself defective or out of repair, while on the contrary it is shown that it was not, but was such as was in general use in planing mills and other wood-working establishments. It is charged and is fully shown that it was a dangerous machine. It is claimed by appellant that the danger was incident to the ordinary operation of the machine, and that appellee, in its use, assumed the risk incident thereto. We need not discuss the well established rule that the employe is held to assume the ordinary risk incident to the work or service he so engages to perform. While the complaint avers that the danger to appellee was increased by the greasy and slippery condition of the pieces of timber he was planing, such fact is determined adversely to appellee by the special finidings. This finding eliminates that question from the case. While it is not seriously contended by appellee's learned counsel that appellee's injury resulted from a danger incident to the ordinary operation of the machine, yet it is strenuously urged that the danger would have been greatly lessened by the use of a guard or apparatus so placed as to prevent the hand from coming in contact with the knives, as found by the jury. It is also contended that it was the duty of appellant to furnish his employe with safe appliances and machinery with which to work, and that that duty required him to provide a guard to protect the employe's hands from the revolving knives. That an employer must furnish his employe with reasonably safe appliances and machinery with which to work is so firmly established by the authorities that the question is no longer debatable. If, therefore, it was the duty of appellant to furnish the guard described in the special findings, so as to bring him within the rule just stated, then his failure to do so would constitute actionable negligence under the averments of the complaint, unless it appears that appellee, with a knowledge of the facts, used the machine in its then condition. But we must remember that the duty to furnish reasonably safe appliances and

machinery does not carry with it the additional burden of making the employer an insurer against injury to his employe. The rule was well and forcibly stated by Mitchell, J., in *Jenney Electric Light, etc., Co.* v. *Murphy,* 115 Ind. 566, as follows: "The employer does not, however, become an insurer of the employe against injury, nor does he covenant to supply tools and appliances that are safe beyond any peradventure or contingency, nor to furnish implements of the best, or most approved, or of any particular design." See *Burke* v. *Witherbee,* 98 N. Y. 562; *Powers* v. *New York, etc., R. Co.,* 98 N. Y. 274; *Lake Shore, etc., R. Co.* v. *McCormick,* 74 Ind. 440. The rule is that what the employer specially engages is that he will not expose the employe to danger which is not obvious, or of which the latter has no knowledge or adequate comprehension, and which is not reasonably and fairly incident to and within the ordinary risks of the service which he engages to perform. *Jenney Electric Light, etc., Co.* v. *Murphy, supra.* The rule applicable to the assumption of the risk on the part of the employe incident to his service is not a varying but a comprehensive one. It embraces within its scope not only such risks as are apparent to the employe by reasonable and ordinary observation, or as are readily discernible by a person of his age, intelligence, and capacity in the exercise of ordinary care, or where his means of knowledge of the dangers that confront him are equally as good as those of his employer, or where he makes discovery of the unusual risks and makes no complaint. *Alcorn* v. *Chicago, etc., R. Co.,* 108 Mo. 81; *Ames* v. *Lake Shore, etc., R. Co.,* 135 Ind. 363; *Sheets* v. *Chicago, etc., R. Co.,* 139 Ind. 682; *Louisville, etc., R. Co.* v. *Kemper,* 147 Ind. 561. Mr. Wharton at §214 of his work on Negligence, says: "Where an employe, after having an opportunity of becoming acquainted with the risks of his situation, accepts them, he can not recover for injuries thereby received." In *Evansville, etc., R. Co.* v. *Henderson,* 134 Ind. 636, we find an able discussion by Mr.

Chief Justice Coffey upon the question of the waiver of an employe of his right of action against his employer for injuries resulting from ordinary dangers incident to the business in which he is engaged. It was said: "This waiver includes, on the part of the servant, all such risks as, from the nature of the business, usually and ordinarily conducted, he must have known when he embarked in the master's service, and, also, those risks which the exercise of his opportunities for inspection, while giving diligent attention to such service would have disclosed to him." In at least two cases in this State the Supreme Court have held that a railroad company is under no obligation or duty to place blocks between the rails where a switch connects with the main track, so as better to protect its employes from getting their feet fast in the angle thus made, and thus increasing the hazard of the service. *Ames* v. *Lake Shore, etc., R. Co.*, 135 Ind. 363; *Sheets* v. *Chicago, etc., R. Co.*, 139 Ind. 682. In the latter case, the court said: "The claim is therefore made, that the appellee was negligent in not constructing its track in a proper manner, or in not furnishing proper equipment therefor, so as to make the same safe to the employes while engaged in the discharge of their duties. Conceding that these blocks are a practical device, and reasonably adapted for the purpose of protecting frogs and switches, the fact that there were no blocks used could be easily ascertained by any one inclined to look at them; the danger incident thereto was obvious, but easily avoided by the exercise of reasonable care. It is not claimed that the switch was improperly constructed, or that it was not suitable for the purposes for which it was intended, or that the danger to persons in getting their feet caught therein could not be avoided. It is not a case of the use of obviously defective machinery or implements with which the deceased was called upon to work, of which defects he had no knowledge; it is not a case of conditions involving secret defects not obvious to the servant, the existence of which the master knew or ought

to have known.    That the switches on this line of road were
unblocked, was known to both master and servant, and what-
ever danger was incident thereto, was apparent to both.
There was no fraud, no suppression of conditions, and no
misunderstanding as to contingencies."

The case of the *Wabash, etc., Co.* v. *Webb*, 146 Ind. 303,
is directly in point.    There appellee was in the employment
of appellant.    In attempting to step over a shaft his clothing
near his left foot was caught by a projecting oil cup and set
screw, which threw him down, and he was injured.    He testi-
fied that he did not see the oil cup and set screw; that they
could not be seen when the shaft was revolving; that the
shaft was always revolving when he saw it, and that he did
not know of the existence of the cup and set screw. He based
his right of recovery on the theory that it was the duty of
appellant to have boxed the shaft, oil cup, and set screw, so
as to obviate the danger in stepping over the revolving shaft.
Howard, J., in delivering the opinion of the court, said:
"It is possible that gearings, set screws, pulleys, belts and
other such exposed parts of machinery might be rendered
more safe by being boxed.    But well conducted mills are
without this extra care; and if usual and ordinary care is
shown in the procurement and maintenance of machinery,
that is all that can be asked.    Extraordinary care can not
be demanded; and the usual and ordinary risks attendant
upon work about such machinery are hazards of the service
which are assumed by the employe.    And if it be con-
ceded that the oil cup and set screw could not be seen when
the shaft was in motion, yet we cannot for that reason say
that such necessary and usual attachments constitute a hid-
den defect to one who for nearly two years has been an
employe in the paper mill where they are found, and who for
three weeks has been engaged in the very room where they
are used, constantly working around, oiling and cleaning the
very machinery to which they are attached."

The Supreme Court of Massachussetts in the case of *Sul-*

Guedelhofer v. Ernsting.

*livan* v. *India Mfg. Co.*, 113 Mass. 396, states the rule in such case, as now before us, as follows: "Though it is a part of the implied contract between master and servant (where there is only an implied contract) that the master shall provide suitable instruments for the servant with which to do his work, and a suitable place where, when exercising due care himself, he may perform it with safety, or subject only to such hazards as are necessarily incident to the business, yet it is in the power of the servant to dispense with this obligation. When he assents therefore to occupy the place prepared for him, and incurs the dangers to which he will be exposed thereby, having sufficient intelligence and knowledge to enable him to comprehend them, it is not a question whether such place might, with reasonable care, and by a reasonable expense have been made safe. His assent has dispensed with the performance on the part of the master of the duty to make it so. Having consented to serve in the way and manner in which the business was being conducted, he has no proper ground of complaint, even if reasonable precautions have been neglected." See, also, *Gilbert* v. *Guild*, 144 Mass. 601, 12 N. E. 368. There appellee was injured while working in appellant's woolen mills while at work with a shearing machine. In operating the machine the cloth passed close to a stationary knife, over against which was a revolving cylinder, upon which were eighteen knife blades, and over which there was no guard. While in this service appellee was injured. In deciding the case, the court said: "The machine was dangerous only because there was danger in working upon it; and, if it was in fact dangerous, it was immaterial that the danger might have been averted by appliances protecting against it. * * * If the plaintiff undertook the work knowing the danger, the defendants are not liable, although they might have prevented the danger by guarding against it." Upon the same question is *Murphy* v. *American Rubber Co.*, 159 Mass. 266, 34 N. E. 268, in which the court said: "There is no absolute

duty on the part of an employer to box his machinery. And under the circumstances of the case there was no duty on the part of the employer to instruct the plaintiff that the coupling on the shaft was not boxed. The fact was obvious and it must be assumed that he could see the condition of things. When the dangerous character of the machinery is in plain sight, a workman ordinarily must take notice, and no duty rests on the employer to point this out." See, also, *Foley* v. *Pettee Machine Works*, 149 Mass. 294, 21 N. E. 304; *Hale* v. *Cheney*, 159 Mass. 268, 34 N. E. 255; *Rooney* v. *Sewall, etc., Co.*, 161 Mass. 153, 36 N. E. 789; *Kelley* v. *Silver Spring, etc., Co.*, 12 R. I. 112. In *Hickey* v. *Taaffe*, 105 N. Y. 26, 12 N. E. 286, plaintiff was a girl fourteen years old and was working in a laundry. Her hand was caught between two rollers, drawn through and crushed. There were no guards or other appliances to protect the employe's hands from the rollers. In delivering the opinion of the court, Peckham, J., said: "But the plaintiff, in accepting this work and entering upon the employment about this machine, assumed the usual risks and perils of the employment and such as were incident to the use of this machine in its then condition, so far as such risks were apparent. · I speak of this as the general rule, and, whatever exception there may be to it on account of the youth of the plaintiff will be spoken of hereafter. But upon the general proposition as to the use of machinery, there is no doubt that an employe in accepting service with a knowledge of the character and position of the machinery, the dangers of which are apparent, and from which he might be liable to receive injury, assumes the risks incident to the employment, and he can not call upon the defendant to make alterations to secure greater safety." In many cases in this State the courts of last resort have held that where a servant is employed to work in a place that is obviously dangerous, and he has an equal opportunity with the master to observe the danger, he assumes all risk of injury that may result from

Guedelhofer *v.* Ernsting.

such dangers. *Railsback* v. *Turnpike Co.*, 10 Ind. App. 622; *Romona Stone Co.* v. *Tate*, 12 Ind. App. 57; *Baltimore, etc., R. Co.* v. *Leathers*, 12 Ind. App. 544; *Louisville, etc., R. Co.* v. *Quinn*, 14 Ind. App. 554; *Pennsylvania Co.* v. *Witte*, 15 Ind. App. 583; *Peirce* v. *Oliver*, 18 Ind. App. 87; *Kerner* v. *Baltimore, etc., R. Co.*, 149 Ind. 21. When a servant undertakes to engage in a master's service, and to perform certain duties, the master has a right to assume that he is qualified to perform the duties of the position he seeks to occupy, and competent to apprehend and avoid all the apparent and obvious hazards of such service. *American Nail Co.* v. *Connelly*, 8 Ind. App. 398; *Peterson* v. *New Pittsburg, etc., Co.*, 149 Ind. 260. From the foregoing authorities, two propositions are firmly established: (1) That appellant was not legally bound to furnish and have attached to the jointer used by appellee the guard described in the complaint and answers to interrogatories, and hence was not chargeable with actionable negligence in failing to furnish it; (2) that the danger incident to the use of the jointer was open and obvious, both to the appellant and the appellee alike, and hence the latter assumed the risk of injury resulting from its use.

We will now determine what antagonism or conflict there is, if any, between the general verdict and the special findings on the question of the alleged negligence of appellant to warn and advise appellee of the increased danger from the operation of the jointer while planing short, narrow, and thin pieces of lumber, as compared to larger and heavier pieces. By the general verdict it was determined that the danger was thus increased, and that appellant did not warn appellee thereof. It was also specially found that as the size of the timber that was to be planed on the jointer diminished, it was more liable to be violently jostled when coming in contact with the revolving knives; that appellee was ignorant thereof, that appellant knew such fact, and that the danger to the person operating the jointer was thereby correspond-

ingly increased. It would seem, therefore, that upon this question the general verdict and special findings are in harmony. But when we look at and consider all the facts specially found, as we must, it seems to us that such apparent harmony is broken and transformed into irreconcilable discord. When we take the answers to the interrogatories as a whole, the fact is firmly established that the increased danger resulting from planing pieces of timber of the size and character appellee was planing when injured was apparent to the observation of an ordinarily intelligent person, and incident to the ordinary use of the jointer. And again it is evident from the special findings that the increased danger to appellee with his ordinary intelligence and his experience was open and obvious, and therefore the increased risk arising from the use of such pieces of timber was assumed by him. It is shown that different sizes of timber could be planed on this jointer. Appellee had planed pieces of different sizes. It is obvious to any person of ordinary intelligence, to say nothing of experience, that the nearer the workman gets his hands to the revolving knives, the danger is correspondingly increased. As the piece of timber diminishes in size, the hands of the operator, while pushing it over the knives, come proportionately nearer to them. This fact is open and obvious. A large and heavy piece of timber, while being pushed on the knives, would be steadier by reason of its own weight than a smaller and lighter one, and therefore not so liable to become violently jostled. A piece of timber might be so heavy that its weight and the law of gravitation operating upon it would hold it steadily to the revolving knives, without force from the operator. It was specially found that the first time a man uses the jointer, and immediately, he learns that the revolving knives offer resistance to the timber he is pushing over them, and that it is necessary for him to apply force to the timber, while so pushing it, to keep

it in place. This is not only a fact specially found, but it is a law of natural philosophy. When an object comes in contact with another of increased power and motion, the one of the lesser power must give way to the one of greater strength.

In *Crown* v. *Orr*, 140 N. Y. 450, 35 N. E. 648, it is held that a person is bound to take ordinary observation of familiar laws, and to govern himself accordingly, and if he fail to do so the risk is his own.

Judge Cooley, in *Michigan Central R. Co.* v. *Smithson*, 45 Mich. 212, 7 N. W. 791, said: "The best notice is that which a man must of necessity see and which cannot confuse or mislead him; he needs no printed placard to announce a precipice when he stands before it." And so, if a servant is operating a circular saw, it is no duty of the master to warn him that if any portion of his person comes in contact with it he will be injured. That is an open obvious fact and is patent to a person of ordinary intelligence. Under the facts, as they appear in this case, we can not believe that appellant owed appellee the duty of warning him of the danger incident to the service in which he was engaged. He had used the jointer every day and about fifteen times every week for three months. He had planed on it "head-blocks" from thirteen to eighteen inches long, and two and one-half inches thick by two to three inches wide. The piece he was planing when injured was about fourteen inches long and about two inches square. He had planed a piece of the same size immediately before the accident. The experience he had had in the use of the machine was sufficient to make him familiar with its operation, and he was bound to know that the danger to his hands increased as he was compelled to have them closer to the revolving knives, by reason of the diminished size of the timber. But there is still a more potent reason which absolves appellant from liability upon this branch

of the case, and that is, the danger was a patent one, open and obvious, and by his experience appellee had, or might have had, by the exercise of his natural faculties, an equal knowledge thereof with appellant. *Big Creek Stone Co.* v. *Wolf,* 138 Ind. 496; *Diamond Plate Glass Co.* v. *DeHorily,* 143 Ind. 381; *Burns* v. *Windfall Mfg. Co.,* 146 Ind. 261; *Louisville, etc., R. Co.* v. *Kemper,* 147 Ind. 561; *Wolf* v. *Big Creek Stone Co.,* 148 Ind. 317; *Becker* v. *Baumgartner,* 5 Ind. App. 576; *Salem Bedford Stone Co.* v. *Hobbs,* 11 Ind. App. 27; *Romona Co.* v. *Tate,* 12 Ind. App. 57; *Chicago, etc., R. Co.* v. *Wagner,* 17 Ind. App. 22; *East Chicago, etc., Co.* v. *Williams,* 17 Ind. App. 573; *East Chicago, etc., Co.* v. *Ankeny,* 19 Ind. App. 150. Much more might be said upon this branch of the case and many additional authorities cited, but it is useless. Under the authorities, we do not see how the general verdict and the special findings can be reconciled. The latter wholly fail to disclose any actionable negligence on the part of appellant. On the contrary, they show that he was without fault. The jointer used by appellee was the kind in general use in planing mills, etc.; it was in good repair; there were no defects in it; appellee had had experience in the use of it at least three months; he knew, or was bound to know, that it was a dangerous machine; he was a person of mature years and of average intelligence; he had had five years experience in working in hard wood; he knew there was no guard on the jointer, and he continued to use it without making any complaint or without a promise on the part of appellant to put a guard on it. Under these facts appellant is shown to be without fault, and that appellee assumes the risk incident to his employment. Our conclusion, therefore, is that the special findings establish facts which preclude appellee's right to recover, and hence there is such conflict and antagonism between the general verdict and answers to interrogatories that they can not be reconciled upon any

reasonable hypothesis. In such case, the answers to interrogatories must control.

Appellant's motion for judgment should have been sustained. This conclusion makes it unnecessary to decide other questions presented by the record. The judgment is reversed, and the court below is directed to sustain appellant's motion for judgment in his favor notwithstanding the general verdict and render judgment accordingly.