Rooney v. Compagnie Generale Transatlantique.

---

Margaret Rooney, as Administratrix of the Goods, Chattels and Credits of Edward Rooney, Deceased, Appellant, *against* The Compagnie Generale Transatlantique, Respondent.

(Decided June 6th, 1881.)

On the trial of an action brought by an administratrix to recover damages for negligently causing the death of her intestate, it appeared that his death was the result of injuries received while discharging cargo from the defendants' steamship, by the fall upon him of a portion of the cargo from the sling in which it was being hoisted out of the vessel, the rope forming the sling having broken, though with less than the ordinary weight of such a draught, owing to defects in the rope which were observable upon inspection. There was evidence that this sling was obtained by one of the laborers from the quartermaster of the steamer, and was one of many which belonged to the vessel, and were carried in her back and forwards across the ocean, usually stowed away, but brought out by the quartermaster when they were wanted for the discharge of cargo, in convenient numbers, the laborers taking the first that came to hand, as was done on this occasion. *Held*, that upon this evidence it was a question for the jury, whether the defendants undertook to supply the men engaged on their vessel in hoisting out the cargo with the necessary slings for the purpose, and if they did, whether they fulfilled the obligation or duty they owed to the men so engaged by providing the sling used in this instance.

APPEAL from a judgment of this court entered upon the dismissal of a complaint.

The facts are stated in the opinion.

*Christopher Fine*, for appellant.

*F. R. Coudert*, for respondent.

CHARLES P. DALY, Chief Justice.—I think this was a case for the jury, and not for the court. It was averred in the complaint that Shaw, the stevedore, had contracted to discharge the cargo of the steamship, and it was shown in evidence that he employed and paid the men engaged in discharging it, but this was all that appeared. It may have been consistently with this statement that the slings used in discharging the cargo were to be supplied by the defendants; and there was evidence showing that the slings were supplied by them, and sufficient evidence, prima facie, in my judgment, to entitle the jury to pass upon the question, whether they had not undertaken to furnish that portion of the hoisting apparatus, and to render the verdict of the jury conclusive on that point; for it was for the jury, and not for the court, to draw whatever inferences may be legitimately deduced from the evidence. If the defendants undertook to furnish the slings used in discharging the cargo from their vessel, they owed a duty to those who were engaged in the hoisting on board the vessel, to furnish slings suitable for the purpose, and capable of sustaining the weight ordinarily put upon them in discharging such a cargo, and if they failed to do so and furnished a sling, the rope of which was so weakened by injuries or defects that were observable as to be unsafe and wholly unfit for the work to which it was put, they would be answerable for the consequences of its breaking while in use, and for injury to any of the men engaged in discharging the cargo who were injured by its breaking without any negligence on their part (*Cook* v. *President, &c. of New York Floating Dry Dock Co.*, 1 Hilt. 436; on appeal, 18 N. Y. 229, and affirmed, but not reported; *Coughtry* v. *Globe Woolen Co.*, 56 N. Y. 126, 127, 128; *Derr-*

Rooney *v.* Compagnie Generale Transatlantique.

*enbacher* v. *Lehigh Valley R. R. Co.*, 10 N. Y. W. Dig. 347; *Thomas* v. *Winchester*, 6 N. Y. 397; *Godley* v. *Haggerty*, 20 Pa. St. 387).

The sling in this case was subjected to what was ordinarily deemed a light weight. The evidence was that the rope of such a sling, if in good condition, was capable of sustaining a weight of 2,600 pounds, and that the weight to which this rope was subjected was about 900 pounds, whereas, 1,600 pounds is not a heavy but a fair draught. Upon the examination of the rope, after the accident, it was declared to be, by the witnesses who examined it, "very brittle, bad, seemingly burnt," that is, "part seemingly burnt out of the rope." A sailor who had used a great many ropes of all kinds, testified that it was not fit for use at all for hoisting; that it looked pretty bad; looked as if it was mildewed from long lying up —a kind of white grey. A painter accustomed to use ropes in putting up scaffoldings, who was on the coroner's jury and saw this sling, testified, that it looked bad; that from its general appearance, in his opinion, it was very poor; that in his business he would not use it; that he would not use it to sustain a scaffold of five or six hundred pounds weight. The evidence further was, that one of the laborers employed by the stevedore got this sling from the quartermaster of the steamer; that the slings used in discharging the cargo belonged to the vessel and were carried backward and forward in her across the ocean; that the quartermaster had them generally tied up and stowed away, but sometimes, if the deck was not full, and they were wanted for the discharge of the cargo, they were thrown upon deck, six or seven pairs of slings on a pile, from which the laborers would take a sling as they wanted one; the first man that was ready to take hold of a sling would take the first one he could get. In this particular instance the laborer Brennan testified that they went to the quartermaster of the ship for a sling and he tossed out a bundle to them, from which the witness took the one next at hand, without examining it, which, as far as he saw, was a good looking rope, with which they worked for about two hours, when it broke. Brennan testified that, when the slings were not on the deck of the steamer,

they had always to ask the quartermaster for them, as they did on this occasion, when he showed them where they were in the closet. On this testimony, it was, in my opinion, a question for the jury, whether the defendants undertook to supply the men engaged on their vessel, in hoisting out the cargo, with the necessary slings for the purpose, and if they did, whether they fulfilled the obligation or duty they owed to the men engaged in discharging the cargo by the kind of sling that was provided for them and used in this instance.

A new trial should therefore be granted.

VAN BRUNT and BEACH, JJ., concurred.

Judgment reversed and new trial ordered.