THOMAS *v.* ANN ARBOR RAILROAD CO.

| 114 | 59 |
| 135 | [1]457 |
| 114 | 59 |
| 137 | [2]486 |
| 114 | 59 |
| 138 | [1]524 |

1. APPEAL—PLEADINGS AND PROOFS—SUFFICIENCY OF DECLARATION
—AMENDABLE DEFECTS.

Where the declaration in an action for personal injuries alleges
negligence in the use of a rope, but the case was tried on the
theory that defendant was negligent in selecting the rope,
the defect is amendable, and on appeal does not preclude a dis-
position of the case on its merits, if it did not turn on such
point in the court below.

2. MASTER AND SERVANT—DEFECTIVE APPLIANCES—SELECTION BY
FOREMAN—NEGLIGENT USE—FELLOW-SERVANTS.

While the foreman of a gang of men employed in putting in a
bridge may be their fellow-servant with respect to the man-
ner of use of materials and appliances furnished by the mas-
ter, or with respect to the selection of the same from among
those near at hand, he represents the master when he under-
takes the duty of selecting suitable materials from a supply
in a warehouse 80 miles distant, and for a negligent selec-
tion, resulting in injury to an employé, the master is liable.

3. SAME—ASSUMPTION OF RISK.

One injured while employed in putting in a bridge, by the fall-
ing of a girder, cannot be said, as a matter of law, to have
assumed the risk of a rope's proving insufficient to support the
weight of the girder, where he claims to have had no knowl-
edge of any defect in the rope, and it appears that he was
not himself engaged in using it at the time of the acci-
dent.

Error to Shiawassee; Smith, J.   Submitted June 17,
1897.   Decided July 16, 1897.

Case by Marshall Thomas against the Ann Arbor Rail-
road Company for personal injuries.   From a judgment
for defendant on verdict directed by the court, plaintiff
brings error.   Reversed.

*Watson & Chapman*, for appellant.

*T. W. Whitney* (*Alex. L. Smith*, of counsel), for
appellee.

MONTGOMERY, J. This is an action brought by plaintiff against defendant to recover damages for personal injuries sustained by him by the falling of a bridge being put in over the Saline river at Milan, Monroe county, Mich., on defendant's right of way, while plaintiff was in the employ of defendant as laborer in putting in said bridge. Plaintiff and other laborers like himself, at the time he was injured, were under the charge and control of one Thomas Turnbull, who had full charge, management, and control of the men and work. The work of getting the foundation of the bridge ready and preparing the abutments had been prosecuted by this plaintiff and other men under a foreman or boss up to about three days before letting in the bridge. After Turnbull came, he took charge of the work and men, and proceeded to let in the bridge, which was done by hauling the girders of the new bridge on the abutments. The apparatus to let the bridge to place were gallows bents, which were not made by the workmen on this job, but were brought there by defendant for the use of the workmen, and which were erected on the abutments; turn-buckles, by means of which the bridge was let in or lowered to place; also guy ropes or lines, which were used for the purpose of guying the gallows bents, which were about 16 feet high, to keep them from falling over when the weight of the girder should come upon them while it was being let in or lowered to place. The apparatus was all supplied by defendant, and the use thereof was unconnected with the work plaintiff had been doing before Turnbull came and took charge, and said apparatus was all under the control of Turnbull. When one of the girders was being lowered to place, and while plaintiff was at work in the river beneath it, one of the guy ropes broke, allowing the girder to fall, by means of which plaintiff was permanently crippled and injured. There was testimony tending to show that the rope broke because it was defective, and that plaintiff had no knowledge of the defects in the rope, and was not present when the bridge was guyed. The selection of

rope was made by Turnbull at defendant's warehouse at Owosso, which is about 80 miles from where the bridge was being put in. Other allegations of negligence were charged in plaintiff's declaration, but on the trial proof was confined to the defective rope as the cause of plaintiff's injury. The learned circuit judge directed a verdict in favor of the defendant on the ground that Turnbull and plaintiff were fellow-servants, and that plaintiff is chargeable with Turnbull's negligence.

It appears that the questions involved are (1) whether, in selecting the rope, Turnbull represented the master, and (2) whether the plaintiff assumed the risk. It is true, the question is made as to the sufficiency of the declaration, in that it alleges that the injury occurred because of the wrongful use of the rope, and not because of any negligence in selecting it; but the case did not turn upon this below, and, as the defect is amendable, the case should be disposed of on its merits. *Ross* v. *Township of Ionia*, 104 Mich. 320.

Defendant's counsel cite numerous cases which hold that when sufficient material or appliances of a proper kind are furnished by the master, and in the course of the operation the injured servant or the fellow-servant makes an improper selection, and in consequence an injury follows, no liability is attached. Among the cases which affirm the doctrine are two found in our own reports, which illustrate the rule. These are *Rawley* v. *Colliau*, 90 Mich. 31, and *Kehoe* v. *Allen*, 92 Mich. 464 (31 Am. St. Rep. 608). In the former, plaintiff was injured by the use of a defective hammer, which had become defective from use. There were other hammers in the shop which might have been used by plaintiff, and he himself selected this one. It was held that plaintiff could not recover, but it was said that, if this hammer had been the only one in the shop, or the only one that could be used, or if defendants had directed it to be used, knowing its condition, another case would be presented. *Kehoe* v. *Allen* followed *Rawley* v. *Colliau*, and held

that, where flasks used by molders became defective by use, and there were plenty of perfect flasks which might have been used, and a fellow-servant of plaintiff selected a defective one, the act of making such selection on the spot was a part of the operation in which the two servants were engaged, and the act of making such selection was the act of a fellow-servant. Neither of these cases goes so far as to sustain the holding of the circuit judge in the present case. There can be no doubt that, when a master delegates to another the duty of selecting and supplying material and appliances to be used in an operation, the one to whom this duty is delegated is, in general, the representative of the master while engaged in and as to the performance of that duty. *Beesley* v. *F. W. Wheeler & Co.*, 103 Mich. 203. The question here presented is whether the fact that the defendant had at the warehouse at Owosso an abundance of suitable material, and delegated Turnbull to select and take to Milan (80 miles away), where this work was to be performed, proper and suitable material, shows a discharge of the duty which the master owed the plaintiff and others engaged upon the work to supply suitable material and appliances.

It is too clear for discussion that if Turnbull had been delegated to purchase and supply the workmen with this material, and had failed to perform that duty properly, the company would have been responsible for his default. Should a different rule obtain when the company has its own storehouse, from which the workmen engaged at Milan had no power to withdraw any material? We think not. We are satisfied that if sufficient suitable rope was on hand, where it was accessible at the time, defendant would not be responsible for the fault of a fellow-servant in selecting defective or insufficient rope. *Prescott* v. *Engine Co.*, 176 Pa. St. 459. But in this case there was no opportunity for selection by the workmen if it be found that the rope furnished was insufficient in quantity and quality. In *Lund* v. *Lumber Co.*, 41 Fed.

202, plaintiff was injured by reason of the giving way of a rope used in the hauling of a barge out of the water. Campbell, the *alter ego* of defendant, ordered one Lynch to procure blocks, tackle, and rope for this purpose. Defendant had in its sawmill, near at hand, ropes, old and new, chains, blocks, and tackle. Lynch selected defective rope. It was held that in making the selection he represented the master. See, also, *Telander* v. *Sunlin*, 44 Fed. 564; *Probst* v. *Delamater*, 100 N. Y. 266; *Rooney* v. *Compagnie Generale Transatlantique*, 10 Daly, 241. We are not to be understood as holding that, if the injury to plaintiff was occasioned by the negligent use made by the foreman of the materials at hand, the fault is imputed to the master; on the contrary, as to such duty Turnbull was a fellow-servant of plaintiff, under the rule established by the majority decision in *Schroeder* v. *Railroad Co.*, 103 Mich. 213. It would be a question for the jury as to whether the injury resulted from negligence of Turnbull in the use of the rope or whether it resulted from insufficient and defective rope. *Robinson* v. *Manufacturing Co.*, 143 Mass. 528; *Prescott* v. *Engine Co.*, *supra*.

Plaintiff testified that he did not have any knowledge of the defect in the rope, and it appears that he was not himself engaged in using the rope. We do not think it should be said, as matter of law, that he assumed the risk. *Ferren* v. *Railroad Co.*, 143 Mass. 197.

Judgment reversed, and new trial ordered.

The other Justices concurred.