JAMES CAMPBELL, DEFENDANT IN ERROR, v. T. A. GILLESPIE COMPANY, PLAINTIFF IN ERROR.

Argued March 10, 1903—Decided June 15, 1903.

1. It is the duty of the master to use reasonable care to furnish proper tools to his workmen.
2. If the master has proper tools within reach of the workmen, and they, through negligence or lack of judgment, select the poor ones, the master will not be liable for any resulting injury to them.
3. When the defect in the tool taken by the servant is obvious, the servant who takes it, although it is the only one on the premises, assumes the obvious risk of danger to himself, but he cannot assume an obvious risk in such case for a fellow-servant who does not know of the danger.

4. As to a fellow-servant, it will not be presumed that his co-servant would have selected an obviously imperfect tool when he might have chosen a good one.

5. Where the negligence of the master concurs with that of the servant in producing injury to a fellow-servant, the master is liable, and therefore the burden is on the master to show that he had furnished proper tools which the servant might have used.

On error.

For the plaintiff in error, *Corbin & Corbin.*

For the defendant in error, *Zebulon M. Ward* and *John M. Ward.*

The opinion of the court was delivered by

VAN SYCKEL, J.   James Campbell, the plaintiff below, was in the employ of the defendant company, engaged in caulking a four-foot steel water pipe, in February, 1902.

His brother William was working on the opposite side of the pipe driving rivets, and one John McClung was inside the pipe.

To bring the ends of the pipe together, so that the rivet holes in one would be over the holes of the other, the riveters used "drift pins," which are round pieces of steel, about seven inches long, small at one end and larger at the other. These pins were driven into the holes to draw them together for the insertion of the rivets.

While William was driving a "drift pin," a small piece of the frayed head of it flew off and struck the plaintiff in the eye, and destroyed its sight.

This suit is brought by the plaintiff to recover damages for the loss of his eye.

The negligence imputed to the defendant company is its failure to provide proper drift pins for the work, the claim being that those which were provided were battered and frayed on the head by the hammering incidental to their use. The judgment recovered by the plaintiff is the subject of review.

The drift pin used at the time of the accident, with others

of less size, had been turned into the shop of the company by the workmen two or three months before the plaintiff was injured.

John McClung, a witness for the plaintiff, testified that on the day of the accident he was sent by the superintendent of the company to get these riveting tools, and that he brought the best drift pins he could find, only one of which was a seven-eighths pin.

William Campbell testified for the plaintiff that when he started to work, the superintendent came around and inquired how it was, and he said: "We have a poor lot of tools," to which the superintendent replied: "They are the best we have got, and there is no blacksmith on the job; go ahead and work with them."

William testified further that the pin was in the same condition when the accident happened as it was when he first used it; that it was absolutely necessary to use a seven-eighths pin, and that there was no other seven-eighths pin in the place where the pins were kept.

There was further evidence that the pin was not fit to work with unless the head was dressed down by a blacksmith.

The duty of the master to use reasonable care to furnish proper tools to his workmen is not controverted. *Maher* v. *Thropp,* 30 *Vroom* 187; *Steamship Co.* v. *Ingebregsten,* 28 *Id.* 400.

If, therefore, it is true that the pin when furnished was imperfect and that no other pin fit for the work could be found upon the premises, the defendant was chargeable with actionable negligence.

In the case last cited this court held that if the master selects an agent to perform the duty of inspection for him, and the agent fails to exercise reasonable care and skill in its performance, the master is liable for the fault of the servant; but if the servant's duty to inspect or repair apparatus is incidental to his duty to use the apparatus in a common employment with fellow-servants, then the master is not responsible to the fellow-servants for the default of the co-servant.

In *Coyle* v. *Griffing Iron Co.*, 34 *Vroom* 609, this court, in its opinion, delivered by the present Chief Justice, said: "Although the master is charged with the duty to his servant of providing reasonably safe and proper machinery and appliances for the latter to work upon, and of using due care in keeping such machinery and appliances in repair, and of making inspection thereof at proper intervals, the servant who operates a machine or mechanical appliance is on his part chargeable with certain duties with relation to such machinery and appliances. * * * Where machinery becomes defective during use, and consequently more dangerous to operate, and such defect is an obvious one, which might have been discovered by the servant by the use of reasonable diligence, he, is presumed to have taken upon himself the risks incident to its further use while out of repair, and if injury results to him from such use, the master is not liable."

Drift pins are obviously subject to deterioration in their use, and thereby to become to some extent dangerous, and if the pin used in this case was, when furnished to William Campbell, reasonably safe for the work of riveting, the duty of inspection fell upon him to see whether it became imperfect during his use of it, and for his neglect to make such inspection the master will not be liable.

But if the drift pin, at the time it was taken by him was unfit for use, and there was not a reasonable supply of safe pins upon the premises accessible to him, and from which he might have selected a good one, the master is in fault.

It is true that if the defect in the pin taken was an obvious one the servant who took it, although it was the only one to be had, assumed the obvious risk of danger to himself in its use, but he cannot assume an obvious risk in such case for a fellow-servant who does not know of the danger. As to a fellow-servant, it will not be presumed that his co-servant would have selected an obviously dangerous implement when he might have chosen a good one.

Where the negligence of the master concurs with that of the servant in producing injury to a fellow-servant, the master is liable, and therefore the burden is on the master

to show that he had provided proper tools which the servant might have used. *Paulmier* v. *Railway Co.,* 5 *Vroom* 151; *New York, Lake Erie and Western Railroad Co.* v. *Sleinbrenner,* 18 *Id.* 161; *Cole* v. *Warren Manufacturing Co.,* 34 *Id.* 626.

On the trial of this cause in the court below, Mr. Justice Dixon instructed the jury:

*First.* If the company had exercised reasonable care to furnish drift pins, and safe tools, there was no liability for the injury to the plaintiff.

*Second.* That if the company had proper tools within reach of the workmen, and they through negligence or lack of judgment selected the poor ones, the company was not liable.

The case was properly submitted to the jury with these instructions.

There was no error in law, and the judgment should therefore be affirmed.

GARRISON, J. (dissenting). With respect to hand tools, such as the "pin" in this case, furnished to servants for what may be termed "destructive use," from their known liability to become impaired in the hands of him who uses them, the duty of such inspection as is incident to use is upon the user, carrying with it the duty either of discarding an unsafe tool, if ordinary prudence so requires, or of delivering it to the proper representative of the master for repair, or, at least, of reporting its unsafe condition.

An injury resulting to a servant of a common master from the failure of a fellow-servant to perform his duty in these respects is admittedly not due to any neglect on the part of the master. Where servants thus neglectful have, in continued disregard of this duty, housed their tools during a temporary cessation of work, without reporting their condition, so that work upon the same job is resumed with them, the negligence of the servant is not thereby terminated, but is still operative as the efficient cause of any injury that may result from it.

To say that this actual neglect on the part of the servant

is transmutable, by verdict, into the theoretical neglect of the master, seems to me to create an illogical rule, impracticable as to masters and dangerous as to servants.

I find in the facts of the present case only this negligence of a fellow-servant, and vote to reverse the judgment.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VROOM. 10.

*For reversal*—GARRISON, VREDENBURGH. 2.