McLEAN v. PERE MARQUETTE RAILROAD CO.

1. MASTER AND SERVANT — RAILROADS — INJURIES TO SERVANTS — DERAILMENT OF CARS—TRANSPORTATION OF FREIGHT.

In an action for injury to a section hand by the derailment of a hand car, evidence *held* sufficient to establish negligence of defendant in permitting an open rack car to be loaded with loose planing mill refuse, from which short pieces of hardwood flooring could fall on the track, one of which caused the derailment in question.

2. SAME — FURNISHING UNSUITABLE CARS — ACCIDENTS — NEGLIGENCE—RES IPSA LOQUITUR.

Where a railroad company permitted planing mill refuse to be loaded loose on an open rack car, so that, as the car was being transported, some of the material would drop from the car, and might be drawn onto the rail and lodge there by the suction of the train, and plaintiff, a section hand, was injured by the derailment of a hand car, caused by the lodgment on the rail of one of the pieces of wood so transported, there being no other possible theory of the cause of the accident, the rule that the happening of an accident was not of itself evidence of negligence does not apply.

3. SAME—CONTRIBUTORY NEGLIGENCE.

Where defendant negligently permitted planing mill refuse to be loaded loose on an open rack car, and plaintiff, a section hand, was injured by the derailment of a hand car, caused by certain of such refuse falling on the track, the fact that, as the train containing the loaded car passed plaintiff, he saw it, and thought it was dangerous to so load such material, he never having seen it loaded in such manner before, did not render him guilty of contributory negligence, as a matter of law, in immediately following the train containing such car on his hand car, under the direction of his foreman.

4. SAME—ASSUMED RISK.

Plaintiff having a right to assume that defendant had furnished a proper car, and loaded it in a proper manner, the danger was not so obvious that he assumed the risk.

5. RAILROADS—STATION AGENTS—AUTHORITY TO BIND COMPANY.

A station agent's actions and contracts within the scope of his authority bind the company.

6. Mᴀsᴛᴇʀ ᴀɴᴅ Sᴇʀᴠᴀɴᴛ — Rᴀɪʟʀᴏᴀᴅs — Iɴᴊᴜʀɪᴇs ᴛᴏ Sᴇʀᴠᴀɴᴛ —
Fᴇʟʟᴏᴡ-Sᴇʀᴠᴀɴᴛs.

Where a railroad station agent was intrusted by his master to
select proper cars for the transportation of property over its
railroad, and he negligently ordered an open rack car for the
transportation of planing mill refuse to be transported loose,
and plaintiff, a section hand, was injured by the derailment of
a hand car, caused by the falling of certain of the refuse on
the rail, the station agent, in selecting such car, etc., was not
plaintiff's fellow-servant, since the railroad's duty to select
reasonably safe cars could not be delegated.

Error to Osceola; McAlvay, J. Submitted June 14,
1904. (Docket No. 19.) Decided September 13, 1904.

Case by William E. McLean, an infant, by his next
friend, against the Pere Marquette Railroad Company
for personal injuries. There was judgment for plaintiff,
and defendant brings error. Affirmed.

On September 5, 1902, plaintiff, a section hand in the
employ of the defendant, was injured by the derailment of
a hand car upon which he and the other members of the
section crew were riding. The section men had been
working on the track about two miles east of Chase.
About 10 or 15 minutes before they quit work in the after-
noon a freight train passed over the track going west
toward Chase. Plaintiff noticed in this train a rack car
loaded with planing mill refuse. The rack car was such
as the plaintiff understood was used for transporting bar-
rels. The open spaces in the rack were three or four inches
wide and about six feet long. The planing mill refuse con-
sisted of pieces of hard maple flooring from three to four
inches wide, and from four inches to three feet long. Plain-
tiff had never noticed such a car, loaded with such mate-
rial, pass over the road before that. It was immediately
in front of the caboose. Immediately upon seeing it, it
occurred to him that that was a dangerous way of trans-
porting mill refuse, for the reason that blocks might drop
out between the racks and be drawn up on top of the rails

by the suction of the train. Ten or fifteen minutes after the train had passed, the section crew placed their hand car on the track, and started toward Chase, following the train with the rack car in it. At that time they saw the smoke of another train coming from the east, and heard the whistle of its locomotive. Under the rules of the railroad company governing trackmen, it was their duty to keep out of the way of moving trains when they were passing along the track on a hand car. As they went westward they were watching the train approaching them from the east. As the hand car approached Chase, it was derailed by striking a block of hard maple flooring about one inch thick, three inches wide, and four inches long, which lay upon the rail just east of a highway crossing. Plaintiff was thrown upon the cattle-guards at the side of the highway, and sustained the injuries upon which this action is based.

The theory of the declaration is that the defendant furnished an improper car for the transportation of material of the character above described, and that a piece of it fell through one of the openings and lodged upon the rail, in consequence of which the hand car was derailed and plaintiff injured.

The suit was brought in justice's court, where plaintiff recovered a verdict of $100. Defendant appealed the case to the circuit court, where a like verdict was rendered.

*Charles McPherson* (*Frederick W. Stevens*, of counsel), for appellant.

*Charles A. Withey*, for appellee.

GRANT, J. (*after stating the facts*). 1. Defendant's first contention is that there is no evidence of negligence. Defendant's trainmaster, a witness in its behalf, conceded that it was unsafe to load an open rack car with such material thrown loose in it. There was sufficient evidence to establish negligence on the part of some one in furnishing and loading the car in the manner described. The

block or piece of wood was found immediately after the accident with the dent of the flange of the car wheel on it. It was of the same material as that with which the car was loaded. The car had passed over the track only 10 or 15 minutes before. It is a fair inference that it fell from that car, and that in some way it lodged upon the rail. It might have lodged there as it fell. The train was going fast, and as the block struck the ground it would naturally roll some distance before stopping, and in this way might have lodged upon the rail. It might have been drawn there by the suction of the train. The evidence of the effect of the suction of a train upon pieces of wood the size of this was conflicting. There was no other probable theory of the cause of the accident. This is not a case, therefore, for the application of the rule that an accident is not of itself evidence of negligence. *Schoepper* v. *Chemical Co.*, 113 Mich. 582 (71 N. W. 1081).

2. The mere fact that, as the train passed, plaintiff saw the car, and thought it was dangerous to load such a car with such material in such manner; and that he, under the direction of the section foreman, rode over the track immediately after, is not conclusive evidence of contributory negligence. Neither did he thereby assume the risk. He had seen nothing of the kind before, and had the right to assume that the defendant had furnished a proper car and loaded it in a proper manner. The danger was not so obvious as to require him to place his own judgment at once against that of his employer. The question of contributory negligence was properly submitted to the jury.

3. It is also contended that the furnishing and loading of the car were the acts of fellow-servants. The precise claim is that the car was furnished to the shipper by defendant's station agent at Reed City, whose province it was to determine the kind of cars to be used; that it was the duty of the train conductor to inspect every loaded car before taking it, and to determine whether it was properly loaded, and to refuse to take it if, upon inspection, he de-

termined it was not properly loaded; and that these two employés were plaintiff's fellow-servants. The question as to the conductor may be eliminated from the controversy by the fact that there is no evidence of any other method of loading this mill refuse into cars for transportation. There is no suggestion, even, of any other method. The method was proper for a suitable car. The plaintiff gave no direct testimony showing by whose authority or direction this car was furnished. The only testimony upon the point is that of defendant's trainmaster, and is as follows:

" As trainmaster I have supervision over the station agents of my division in the handling of cars for trains. I am acquainted with the manner in which agents obtain cars for their customers. The station agent determines what sort of a car shall be delivered to a customer who wants one. The customer applies to the agent, and the agent orders the kind of a car he wants from the car distributor. If the agent wanted a stock car for sheep, he would not specify to the car distributor that he wanted it to put sheep in. He would simply order a single or double deck stock car for a given destination. If he wanted a rack car, he would not specify to the car distributor what kind of wood he wanted to put in it. It appears that on the day on which plaintiff was injured a rack car loaded with mill refuse was shipped out of Reed City. The agent at Reed City determined what kind of a car should be used for that purpose. If he had chosen to order a box car, or a gondola, he could have obtained it."

Under this record the defendant intrusted its station agent to select proper cars for the transportation of property over its road. The authority of a station agent is very extensive. His actions and contracts in all things within the scope of his authority bind the company. 1 Wood on Railroads, § 165.

It is established by the decisions of this court that the primary duty to provide cars, etc., reasonably safe and in reasonably good condition for the purposes for which they are to be used, is one which cannot be delegated. *Thomas* v. *Railroad Co.*, 114 Mich. 59 (72 N. W. 40); *Sheltrawn* v. *Railroad Co.*, 128 Mich. 669 (87 N.

W. 893); *Morton* v. *Railroad Co.*, 81 Mich. 425 (46 N. W. 111); *McDonald* v. *Railroad Co.*, 132 Mich. 372 (93 N. W. 1041). This duty is not performed by furnishing a car designed, suitable, and safe for one purpose, to be used for another purpose for which it is unsuitable and unsafe. The shipper in this case did not ask for a car suitable and safe for the transportation of barrels, but for one suitable and safe for the transportation of his mill refuse. The defendant is equally responsible for furnishing a car unsuitable and unsafe for the use to which it is to be put as it would be in furnishing a car of the proper kind in an unsafe condition. Cases of defective loading (*Miller* v. *Railroad Co.*, 123 Mich. 374 [82 N. W. 58]) have no application to cases where defective appliances and machinery have been provided. See a discussion of this subject in *Beesley* v. *F. W. Wheeler & Co.*, 103 Mich. 203 (61 N. W. 658, 27 L. R. A. 266).

Some errors are assigned upon certain portions of the charge of the court. They are, in the main, controlled by what we have already said. Considering the charge as a whole, it was a correct exposition of the law, and we think there is no occasion for holding that the jury were misled by it, although in one instance a sentence standing by itself is not strictly correct.

Judgment affirmed.

The other Justices concurred.