INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY v. H. N. HALL.

Decided May 22, 1907.

**1.—Negligence Must be Proved.**

In a suit for personal injuries negligence must be shown by affirmative proof, and to fix the liability of a master for injuries sustained by a servant the negligence of the master must not only be shown, but such negligence must be proved by affirmative evidence to have been the proximate cause of the injury.

**2.—Same—Insufficient Proof.**

In a suit for personal injuries received while driving a scraper, a verdict for plaintiff can not be sustained upon bare proof that a latch on the scraper was out of order and the employee, while endeavoring to fix it, hurt his leg in some unexplained manner.

**3.—Assumed Risk—Knowledge.**

If the master and servant stand upon an equal footing with respect to knowledge of the danger, then in case of a resulting injury the master is exonerated. And so of a danger which the servant would have known by the exercise of that ordinary circumspection which a prudent man would have used in the particular employment.

**4.—Same—Repair of Tools.**

Where an employee engaged in driving a scraper, voluntarily and as no part of his duties, undertook to repair a defective latch on the scraper and is injured while doing so, he assumed the risk and is not entitled to recover against the master.

**5.—Special Charges—Action of Court—Notation.**

Where special charges are requested and the action of the court is not noted thereon nor signed by the judge, such charges can not be considered on appeal. A notation in the margin of the transcript "charges given" and "charges refused" is not sufficient although both parties treat such notation as correct.

**6.—Same—Identification—Briefs.**

Where special charges are not numbered in the transcript and the charges complained of in the assignments of error can not for that reason be certainly identified the assignments will not be considered.

Appeal from the District Court of Brazos County. Tried below before Hon. J. C. Scott.

*N. A. Stedman* and *Doremus & Butler,* for appellant.

*Lamar Bethea* and *J. R. Astin,* for appellee.

FLY, ASSOCIATE JUSTICE.—This is an appeal from a judgment for $625 recovered by appellee in a suit for damages, in which suit it was alleged that appellee had been injured through the negligence of appellant in furnishing him with a defective scraper, with which to perform his labor as an employe of appellant. The alleged defect was in a latch which was intended to automatically catch the scraper after it had been emptied of its loads, and hold it free of the ground while it was being hauled back to place where it was to be again filled. Appellant answered by general demurrer, general denial, and pleas of contributory negligence and assumed risk.

The appellee testified as follows: "On the day I was injured I was out there working in the pit in the fore part of the day and there was a man quit about two o'clock in the day. It was awfully warm and the foreman called me out from under the trap where I was working with a shovel and he told me to take the scraper and run it. It was a wheel scraper and I took it and worked on until about four o'clock. About four o'clock the latch that was supposed to catch the pan when you dumped the gravel out to hold it up and keep it from dragging, would not work, it would not catch the pan and I was trying to make the latch catch the pan to hold it up and keep it from dragging, and the corner of the scraper hit my leg and cut it and cut it badly. I suppose some of you (meaning the jury) have seen these wheeler scrapers. The pan hangs below the axle and there is a Johnson bar sticks out behind and you catch hold up there and it dumps the gravel on a flat car that is down below the trap, and when you raise the Johnson bar up it throws the pan up in the right direction and the latch is supposed to catch that pan and hold it up to keep it from dragging; we were not allowed to let the pan drag; it was against orders to let the pan drag, and there was no way to keep it from dragging only to catch that and hold it up until you got back to where you would load again. The bridge from which we dumped in which the trap was located was about level, near about level where you went up, and you got to the hole where you dumped the gravel through it; it started then with a decline, right smart decline down to the far end of the bridge and you then went down and turned around with your team and came back. If that latch had worked as it ought to I never would have been hurt. My duties were to do anything that Mr. Fulton, the foreman, told me to do. Sometimes he had me digging on the bank with a pick, sometimes on the bank shoveling up the gravel and then sometimes I would be down below the trap throwing gravel and dirt on the cars that would fall off, sometimes I would be doing one thing and sometimes another; sometimes I run a wheel scraper. I was not a regular scraper hand and had not had much experience with a scraper; never had seen one before I went to work there."

He also testified that the scraper was simple in its construction, that the latch was in full view all the time and that he had hauled twenty-four loads with the scraper before he was hurt and that the latch never failed to catch, up to that time. In a letter to the general claim agent of appellant, written shortly after the accident,

appellee stated that the latch sometimes worked and sometimes did not, and that he did not report its condition because the foreman was present "and could see for himself." Weaver, a witness for appellee, testified that appellee told him "that sometimes the latch would catch and sometimes it would not." That witness also testified that there was a blacksmith shop on the ground to mend anything that needed repairing, and that it was a custom to report it, if a scraper got out of repair, and carry it to the blacksmith shop.

Appellee gave no explanation whatever in his testimony as to how he was hurt, and this court is left in doubt as to whether the pan fell and struck his leg, or whether he ran his shin against the scraper and hurt himself. The latter view seems to be sustained by his letter to the claim agent in which he stated: "I was driving a wheel scraper and the latch that was supposed to drop and catch the pan after the gravel had been dumped would not catch. I was reaching over trying to force the latch to catch, striking my shin against the edge of the pan and cutting it."

The latch was not shown to have been broken or defective, but if the evidence of appellee is to be credited, it had worked perfectly up to the time that accident occurred. According to that theory the only evidence of negligence was the fact that the latch on the scraper failed to catch once in twenty-four times, and whether such failure was the fault of the latch or not does not appear. If, however, we take what appellee wrote in his letter, the genuineness of which was admitted by him to be true, the latch failed to work at times during the time he was at work and he knew of its defect and it was his duty to report the defect and have it repaired. He did not report it, and there is evidence that indicates that he tried to fix the latch while the scraper was moving, which was in violation of the rules of the company.

Let it be admitted that the questions of whether the one failure of the latch to act, or the failure of the appellee to report the condition of the scraper, of the violation of the rules of the company, were matters to be determined by the jury, still there are no details upon which to base a conclusion as to how appellee was hurt. The circumstances as narrated by him, on the witness stand, offer no solution of the problem, nor show that the failure of the latch to act was the direct and proximate cause of the injury to appellee.

Negligence is to be proven with some degree of certainty to justify the recovery of damages, and a verdict can not be sustained upon bare proof that a latch was out of order, and an employe while endeavoring to fix it in some manner hurt his leg. "Negligence must be shown by affirmative proof and to fix the liability of a master for injuries sustained by a servant his negligence must not only be shown, but such negligence must be proved by affirmative evidence to have been the proximate cause of the injury." Missouri, K. & T. Ry. v. Greenwood (Texas Civ. App.), 89 S. W. Rep., 810.

Every legal proposition advanced by appellee in his brief may meet with full approval and yet an affirmance can not be had, because there is nothing to indicate negligence upon the part of appellant, and had negligence been shown, there is no testimony that shows

that such negligence was the proximate cause of the injury to appellee.

If the latch was defective, as contended by appellee, the defect was as open to him as it was to his employer. He worked with the scraper for at least two hours, with the latch directly in front of him. He could not have avoided seeing it, and in fact does not claim that he did not see it. The rule is thus stated in such matters by the Supreme Court in Bonnet v. Galveston, H. & S. A. Ry., 89 Texas, 72: "If the master and servant stand upon an equal footing with respect to the knowledge of the danger, then in case of an accident as a result of the danger, the master is exonerated. The servant owes no duty of inspection. He assumes the risk of a danger of which he has actual knowledge and of such hazards as he would have learned by the exercise of that ordinary circumspection which a prudent man would use in the particular employment."

The testimony fails to indicate that the latch had ever failed to catch before, and appellee swore that this was the first time it failed to act while he was using it. If there was a defect or breakage it was just as apparent to appellee as to the foreman, and more so perhaps because appellee was in immediate proximity to it. If it had been failing to catch at intervals during the two hours appellee was using it, he knew that it was out of order and must have assumed the risks arising from its use. Hynson v. St. Louis, S. W. Ry., 86 S. W. Rep., 928.

Again, the evidence shows that the injury did not arise from the use of the scraper in the usual way, but that it resulted from an attempt upon the part of appellee to fix the latch. That was no part of his duties, and when he undertook it it was at his own risk. Ray v. Diamond State Steel Co. (Del.), 47 Atl. Rep., 1017; Indiana, etc., Gas Co. v. Marshall (Ind.), 52 N. E. Rep., 232; Southern Ry. v. Guyton (Ala.), 25 So. Rep., 34; McCue v. National Starch M'f'g Co., 142 N. Y., 106; Pittsburgh C. & St. L. Ry. v. Adams (Ind.), 5 N. E. Rep., 187; Degnan v. Jordan (Mass.), 41 N. E. Rep., 117; Chielinsky v. Hooper (Del.), 40 Atl. Rep., 1127; Mellor v. Merchants' M'f'g Co. (Mass.), 23 N. E. Rep., 100; Branham v. Camden Mill (S. C.), 39 S. E. Rep., 708; McGill v. Maine & N. H. Granite Co. (N. H.), 46 Atl. Rep., 684.

In the case of McCue v. M'f'g Co., above cited, the Court of Appeals of New York, in a case where the plaintiff attempted to fix machinery while moving, said: "The sole cause of the accident was the attempt of the plaintiff to do that while the shaft was revolving. His duty did not require him to run such a risk. He received no order or direction from any one to attempt an operation involving so much danger. It was a voluntary act on his part not at all necessary to the performance of the work which he was employed to do." The court further used the following language, which is appropriate to the facts of this case: "The machinery, so far as he had anything to do with it, was of the simplest kind. Whatever dangers were involved in the act which he attempted to perform were obvious, and as well known to him as to his master. He could not voluntarily do an act which he was not required to do and charge the master with responsibility for the resulting injury."

It is provided in the statutes that when instructions are asked and some of them refused, the judge shall note distinctly which of them he gives and which he refuses, and shall subscribe his name thereto. Art. 1320, Sayles Stats. In this case two instructions were asked by appellee and ten by the appellant and the name of the judge is not subscribed to either of them, and the only thing that tends to indicate which were given and which were refused are the words "charges refused" written on the margin of the transcript opposite the first charge asked by appellee, and the words "charges given" written on the margin opposite the eighth instruction requested by appellant. It may be inferred perhaps that "charges refused" refer to the first ten requested and that "charges given" refer to the last three, because both parties seem to so treat it in their briefs. It is, however, an unwarranted manner of making up of the record that should be condemned and which might jeopardize the rights of those seeking redress at the hands of appellate courts. Galveston, H. & S. A. Railway v. Worcester (Texas Civ. App.), 100 S. W. Rep., 991. None of the charges has a number attached to it and yet those of whose rejection appellant complains, are numbered in the assignments, although no reference is made to indicate which one of the unnumbered charges is referred to in the assignments. If it should be the duty of this court to take the numbers as referring to the special charges in their order, it may be said that the numbers given in the assignments do not correspond with those that would be obtained by reading from the beginning downward. The assignments should not be considered.

The judgment is reversed and judgment here rendered that appellee take nothing by his suit and that he pay all costs of this and the lower court.

*Reversed and rendered.*