## POPE v. ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS.

(Court of Civil Appeals of Texas. March 9, 1911. On Motion for Rehearing, April 6, 1911.)

### On Motion for Rehearing.

MASTER AND SERVANT (§ 233*)—INJURY TO SERVANT — DEFECTIVE TOOLS — CHOICE BY SERVANT.

A servant injured by a piece flying from the head of a chisel was not entitled to recover therefor, where he selected the chisel from defendant's tool box where there were other chisels reasonably safe for the work, from which plaintiff might have made a selection, and he further knew that he could get safe chisels from defendant's storehouse or blacksmith shop.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 701; Dec. Dig. § 233.*]

Appeal from District Court, Smith County; R. W. Simpson, Judge.

Action by J. A. Pope against the St. Louis Southwestern Railway Company of Texas. From a judgment for defendant, plaintiff appeals. Affirmed.

Johnson & Edwards, for appellant. Marsh & McIlwaine and E. B. Perkins, for appellee.

HODGES, J. The appellant, J. A. Pope, sued the appellee railway company for damages resulting from a personal injury. Pope was an employé of the railway company, and belonged to what was called the "scrap gang," working in the yards at Tyler. It was a part of his duty to "strip" iron. This was done by means of a chisel held by one man and struck with a sledge, or maul, by another. Upon the occasion in question Pope was wielding the sledge, and an employé by the name of Mattox was holding the chisel. A piece from the head of the chisel flew off and struck Pope in the eye, entirely destroying the sight of that member. The negligence complained of and relied on as the basis of the action was the furnishing of an unsafe tool with which to work. The case was tried before a jury, and a verdict returned in favor of the railway company.

There is but one assignment of error, and that complains of the giving of the following charge: "You are charged that, although you may believe from the evidence that there were no reasonably safe chisels in the tool box at the time plaintiff selected the chisel that he was working with when injured, yet if you believe that plaintiff could have procured a reasonably safe chisel at the blacksmith shop of his own accord, or could have procured a reasonably safe chisel from the storeroom on the requisition of the foreman, and that plaintiff knew or by the exercise of ordinary care in the performance of his work must have necessarily known that he could have procured such chisel at the blacksmith shop or from the storeroom as hereinbefore stated, then it will be your duty to return a verdict for the defendant in this case." The facts show that the chisels and other tools used by Pope and his fellow workmen were kept in a large box in the yards of the company at that place. According to the testimony of Pope, he was working under a foreman named Roderick, whose duty kept him moving from place to place in the yards superintending the work there going on. Pope and Mattox were directed by Roderick at noon on the day of the injury to "strip" iron that evening. It appears that they had not been engaged in that particular line of employment during the morning. After dinner they both went to the tool box. Mattox got the maul, or sledge, and Pope the chisel that was used, and from which the piece flew off that injured his eye. There were probably two dozen or more chisels in the box. They were kept in no particular place in the box, but were thrown in with a variety of other tools and implements used by the scrap gang. Pope looked at several of the chisels, and picked out this one because he thought it a safe one and the best of the lot. He says: "I thought it was safe to work with the track chisel with which I was hurt. I thought that the chisel I had selected to work with was perfectly safe for me to work with. I had been working there 11 months, using track chisels 11 months. I did not anticipate and could not see, and did not know, that the use of that track chisel was at all liable to hurt me, and I took it and used it for that reason. I don't know where Mr. Roderick was when I got the chisel. I did not ask Mr. Roderick to give me a better chisel. I went to the box to get the chisel where they were kept." On being asked if he did not know that Roderick was the man to whom he should apply for a new chisel if needed, he answered: "I knew Roderick was the man to apply to. I knew that, if I applied to Roderick, he would give me an order and I could go to the blacksmith shop, or to the storeroom, and get a new chisel. We never failed to get anything we sent after. I made no requisition on Roderick for a new chisel there.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Roderick was not there at all when I selected this chisel on that occasion." Roderick testified, and he is not contradicted, that, when he wanted the men to strip iron, he would just tell them to go ahead and strip iron, and the men got their own tools. The track chisels were kept in the tool box. When they get in bad shape, they ought to be taken to the shop for repairs. If a track chisel got in bad shape, it was thrown aside for a new one. If there was not any in the box, the men could go to the blacksmith shop and get one. They did not have to get a requisition from him to get a chisel from the shop. When they wanted to get a new one from the storeroom, it was necessary to get a requisition, and he would issue one for them. All of the men knew that they could get chisels at the blacksmith shop when they needed them. There was other testimony strongly corroborating the statements made by Roderick. Assuming that the chisel used by the appellant was a defective and unsafe tool, still the case does not come within the rule announced in Drake v. Railway Co., 99 Tex. 240, 89 S. W. 407, cited by the appellant. In that case the court held that the master might be charged with liability for injuries resulting from the use of a defective simple tool when it had been placed in the hands of the servant and he was given no opportunity to examine it for himself, and no choice of selecting another and better one. Here the tool was simple, and the defect, if any, was as obvious to the servant as to any other person. He says himself that he examined it, and that in his judgment it was safe for the use to which it was to be applied. It is also shown by evidence which is not disputed that Pope had the time to examine the chisel, and the opportunity to get another and better one if he wished, by applying to Roderick for a requisition on the stock in the storeroom, where new chisels were kept, or by going to the blacksmith shop, which was only about 200 yards distant from the tool box, and there getting one which had been repaired. Under the evidence, we do not think any other verdict should have been returned, and it is immaterial whether the charge complained of was erroneous or not. We think the judgment should be affirmed.

### On Motion for Rehearing.

Counsel for appellant calls our attention to an error in the statement of the facts embraced in the original opinion, in which we quote Pope as testifying as follows: "I knew that, if I applied to Roderick, he would give me an order, and I could go to the blacksmith shop or the storeroom and get a new chisel." Counsel is right. The testimony as actually incorporated in the record is as follows: "I knew that if I applied to Roderick, and he gave me an order, I could go to the blacksmith shop or the storeroom and get a new chisel." The difference, however, is slight, as will appear by a comparison.

It is also insisted that we were in error in saying that Roderick was uncontradicted in his statements that all of the men knew that they could get chisels at the blacksmith shop when they needed them, or from the storeroom by requisition from him. This was probably stating the case more strongly than it should have been. While there was no explicit contradiction of Roderick, yet the impression made by the testimony of the appellant himself was that he was not aware of that situation. The inconsistency, however, was such that we treated it as not amounting to a practical contradiction.

In disposing of the case, we based our affirmance of the judgment of the trial court solely upon the ground that no other verdict should have been rendered upon the facts, and did not discuss the special charge complained of in the only assignment of error urged upon appeal. The negligence relied on, as before stated, is the failure on the part of the railway company to furnish Pope, its servant, with a safe implement with which to perform his work. Assuming that the facts justify the conclusion that the implement with which Pope was working at the time he was injured was an unsafe one, the question then arises: Did the company furnish him with that instrument, or was it one of his own selection from a number of other and better ones to which he had access? In the Drake Case, before referred to and upon which the appellant relies, the facts show that the employé was injured by a defective hook with which he was attempting to move some steel rails. The hook was on the car on which the employé was ordered by the foreman to go and assist another in handling the rails. A rail hook had already been placed upon the car, and the employé used it in his work. The instrument is shown to have been worn, and on that account slipped while he was pulling upon it, thereby causing him to lose his balance and fall from the car and sustain the injuries complained of. The injured party testified that he did not notice the defective condition of the hook until after he had fallen. He also stated that he was ordered by the foreman when he went up on the car, and continually while doing the work, to "hurry up and get the rails out of the way," and that he had no occasion to examine the hook, had to pick it up as he came, and thought it safe. He says he did not select the particular hook, but found it upon the car, where one was usually put for use when such work was being done. In discussing the case the court said: "It is true that oftentimes the character and condition of an implement are so plain that the master cannot be said to have been guilty of neglect of the duty because he has left it to the servant to see and know for himself all that was essential to his safety, but this assumes that there has been sufficient opportunity on the servant's part to ascertain in the prudent use of the thing the

risks to be avoided. If the master actually puts into the hands of the servant an implement which the master ought to know to be in a dangerous condition, or such immediate and hurried use that the servant is likely to use it without opportunity to see the defect and the attendant dangers and to receive injury, the master's liability for an injury thus caused would scarcely be denied. This case is not clearly of that character, and it is, it must be confessed, a very close one. But we are of the opinion that the circumstances as stated in the plaintiff's evidence, the tendency and effect of which we shall not discuss at length, were such as to entitle him to have the jury determine the question of negligence vel non of the defendant upon a consideration of all the facts. * * * Whether or not the condition of a tool is so obvious that a servant necessarily assumes the risk of using it must depend in some cases not merely upon the simple character of the instrument itself and the openness of the defect in it, but also upon the situation and condition of the servant himself, his opportunity and capacity for discovering that condition, and the circumstances calculated to withdraw his attention from it; and the test in doubtful cases is the judgment of the jury upon the question of whether or not persons of ordinary prudence, similarly situated, would have discovered the risk." The facts of that case are clearly distinguishable from those in this. Here Pope, who was an experienced employé, had ample opportunity to inspect the chisel, and, according to his own testimony, he did examine it. The special charge submitted to the jury the issue as to whether there were other chisels reasonably safe for that work from which Pope might have made a selection. The testimony conclusively shows that safe chisels were kept both in the storeroom and at the blacksmith shop; and in the special charge referred to the court in effect tells the jury that if Pope knew, or in the exercise of ordinary care in the performance of his work must necessarily have known, that he could have procured safe chisels from either of those sources, then he was not entitled to recover. In other words, if Pope knew, or should be charged with knowledge, of these facts, then it cannot be said that he was restricted in his selection to the chisels contained in the tool box. We think the following authorities support the charge and the verdict rendered in this case: Lynn v. Glucose Sugar Refining Co., 128 Iowa, 501, 104 N. W. 577; Guedelhofer v. Ernsting, 23 Ind. App. 188, 55 N. E. 113; Campbell v. T. A. Gillespie Co., 69 N. J. Law, 279, 55 Atl. 276; Allen v. Iron Co., 160 Mass. 557, 36 N. E. 588; Maloney v. Rubber Co., 169 Mass. 347, 47 N. E. 1012; Rawley v. Colliau, 90 Mich. 31, 51 N. W. 350; Kehoe v. Allen, 92 Mich. 464, 52 N. W. 740, 31 Am. St. Rep. 608; Thomas v. Railroad Co., 114 Mich. 59, 72 N. W. 40; Cronin v. Russell Wheel & Foundry Co., 132 Mich. 500, 93 N. W. 1070; I. & G. N. R. R. Co. v. Hall, 46 Tex. Civ. App. 493, 102 S. W. 740.

The motion for rehearing is overruled.